ARNOLD *vs.* FOOT.

Where a *spring* of water rises upon the land of one owner, and from it runs a *stream* on to the land of another, the owner of the land upon which is the spring, has no right to *divert the stream from its natural channel*, although the waters of the stream are not more than sufficient for his domestic uses, for his cattle, and for the irrigation of his land.

ERROR from the Livingston common pleas. Arnold sued Foot in a justice's court, and declared against him for placing obstructions and thereby diverting a *stream of water* from its natural channel, and preventing it from flowing in and upon the plaintiff's land. The defendant pleaded *not guilty*, and accompanied his plea with a notice that, on the trial of the cause, he would prove that the *source* of the waters of the stream which he had obstructed was on his own land, and that he had obstructed the stream no further than what was necessary for the use of his cattle and the irrigation of his lands. On the trial, the following facts appeared: The parties own adjoining farms; on the farm of the *defendant*, within five or six rods of the land of the *plaintiff*, there is a living *spring*, the water from which, in its *natural channel*, flows to and upon the land of the plaintiff, and has so run for about twenty years. Immediately after coming upon the land of the plaintiff, it is received in a watering place for cattle, dug for that purpose, and from thence flows over the pasture and meadow of the plaintiff. The *spring* is near the dwelling house of the defendant, and is used by him for domestic purposes and for watering his cattle. About the 20*th April*, 1831, the defendant ploughed a furrow below the spring, and thereby diverted the water from its natural channel, and caused it to flow upon his own meadow to the extent of three or four acres. Soon after the diversion of the water, to wit, on 3*d May*, the plaintiff commenced his suit. It was shown that the furrow made to divert the stream is not more than eight or ten rods in length, and that at its termination the water *soaks* into the ground, causing it for several rods round to be quite wet. Puddles of water are also observed on the *plain-*

tiff's meadow, near the boundary line between the two farms, supposed to proceed from the termination of the furrow. The defendant proved that no more water runs from the spring than what is wanted for his domestic purposes, for his cattle, and for the irrigation of his land. There is quite a current, but the stream is small, and in the summer season it does not run upon the *plaintiff's* land more than ten rods. The justice gave judgment for the plaintiff for *one dollar and seventy-five cents* damages, besides costs. The common pleas of Livingston, on *certiorari*, revised the judgment of the justice, and the plaintiff below (Arnold) sued out a writ of error.

*J. Young*, for plaintiff in error.

*C. H. Bryan*, for defendant in error.

*By the Court*, SAVAGE, Ch, J. The doctrine of the common law in respect to the use of running waters is no where better expressed than by *Chancellor Kent*, in his commentaries, 3 Kent, 439. Every proprietor of lands on the banks of a river has an equal right to the use of the water which flows in the stream, as, it was wont to run, without diminution or alteration. No proprietor has a right to use the water, to the prejudice of other proprietors above or below him. He has no property in the water itself, but a simple usufruct while it passes along. He may use the water as it runs in its natural channel, but he cannot unreasonably detain it, or give it another direction. He cannot divert or diminish the quantity of water which would otherwise descend to the proprietors below, nor throw the water back upon the proprietors above. Streams of water are intended for the use and comfort of man, and every proprietor is entitled to a reasonable use of the water, and may apply it to domestic, agricultural, and manufacturing purposes; but not so as to destroy or materially diminish or affect the application of the water by the proprietors below on the stream. Although each proprietor through whose lands a stream flows, has a right to the use of the water in its natural channel, he may not use it to the prejudice of another. In the language of Mr. Justice Story, " The natural

stream, existing by the bounty of Providence for the benefit of the land through which it flows, is an incident annexed to the land itself." 4 Mason, 400. The use of the water for culinary and agricultural purposes implies a diminution of it, but this use must be with the least possible injury to others interested in the same stream.

In the case now before the court, the water from the spring in question was wont to run *currere solebat*, in a direct line, into the plaintiff's premises. This was the direction given to it by Providence; it was intended to water the land immediately below the spring; and it must continue to water that land, no matter who may be the owner. The defendant has a right to use so much as is necessary for his family and his cattle, but he has no right to use it for irrigating his meadow, if thereby he deprives the plaintiff of the resonable use of the water in its natural channel. The evidence shows that the defendant has appropriated the whole water to his own use; and he seems to suppose that he possesses that right. Such also must have been the opinion of the common pleas—and in this consists the error. The general principle laid down by Lord Ellenborough in *Bealey* v. *Shaw*, 6 East, 214, is this: " The general rule of law, as applied to this subject, is, that independent of any particular enjoyment used to be had by another, every man has a right to have the advantage of a flow of water in his own land, without diminution or alteration." This proposition has often been quoted with approbation and adopted by this court, and recently in the case of *Crooker* v. *Bragg*, 10 Wendell, 264. The case of *Brown* v. *Best*, 1 Wils. 174, was in some of its circumstances, much like the present, and fully exemplifies the principle. The plaintiff declared upon his possession of the land through which the water used to run, and set out the course thereof, and averred that the defendant obstructed it by digging pits and making ponds, by which the water was diverted and sunk so that no water came to the plaintiff's grounds. The defendant pleaded that all the water sprung in his ground; that two pits had been there *time out of mind*, for the use of water for the meadows and cattle; that at the time when, &c. those pits were choaked up with mud, and therefore he

dug two large pits and made dams and banks, which he in-
sisted it was lawful for him to do. That case and this are
just alike, except that in that the defendant claimed a *right*
*by prescription* to have two large pits full of water, which is not
pretended in this case. The question there arose upon de-
murrer, as to the sufficiency of the defendant's plea. Chief
Justice Lee held the declaration right, and that the plea ad-
mits the existence of the water-course, and acknowledged
that the defendant had enlarged the pits. This the chief jus-
tice said really amounted to a confession of the plaintiff's ac-
tion : for though there might have been pits on the defendant's
ground time out of mind, yet he could not enlarge them, but
they must remain as they always had been; and such, he
said, is the rule both in the common and civil law. The
whole court concurred in giving judgment for the plaintiff.
That case shows what was meant by Lord Ellenborough by
the expression *independent of any particular enjoyment.* The
particular enjoyment was the right to fill the two pits. The
defendant had used the water in that way time out of mind,
and therefore had a prescriptive right to that use besides the
natural use of the stream. So, if the plaintiff in this case had
submitted for twenty years to the defendant's appropriation of
the water of the spring, by diverting it from the natural chan-
nel and carrying it in a different direction, his right would be
gone ; and but for the prescriptive right set up in *Brown* v.
*Best,* the defendant would have had no right to fill those pits.
The court decided that he had no right to dig *new pits.* The
defendant in this case, by ploughing furrows and thus diverting
the water from its natural channel, has done the same thing
which the defendant in that case did by digging new pits ;
and in both cases the consequence is the same—the soakage
of the water into the defendant's ground, whereby the plain-
ttiff is deprived of the use of it. The defendant had no such
right, and the plaintiff has sustained damage. The action
therefore lies.

Judgment of common pleas of Livingston reversed, with
costs, and judgment of the justice affirmed.