# KIRBY v. LINDSAY.

*Third District Court for Santa Cruz Co., March T.,* 1858.

### WATER COURSES—INJUNCTION—RIPARIAN RIGHTS.

The law concerning the rights of riparian proprietors, is applicable to artificial water courses as well as natural ones, from which the former are not distinguishable ; a title may be gained by twenty years *user,* as well to the former as to the latter.

No riparian proprietor has the right to use the water to the prejudice of the proprietors above or below him, as he has no property in the water itself, but a simple usufruct as it passes along. He must use it in a reasonable manner, which would not exclude domestic and manufacturing purposes.

A riparian proprietor cannot give the owners of land not adjoining the water course, the right to divert any portion of the water to the prejudice of the proprietor below.

Where a riparian proprietor requires *all* the water naturally flowing in a water course, in order successfully to carry on a certain manufacture, his right to the same will not be defeated by the fact that he had previously given permission to certain owners of land to divert a portion of the water at a point above him, " provided he be not thereby injured," although subsequent to the time of giving the permission, he may have increased his manufacture so as to require the whole of the water.

Where it is manifest that a riparian proprietor will suffer great loss by reason of the diversion of water from a water course, an injunction will be granted to restrain such diversion.

This suit was instituted by the plaintiffs against the defendants, charging them with diverting a portion of a stream of water which issued from the spring of one *Russel,* and ran along and by the land and

tannery of the plaintiffs, to the town of Santa Cruz, whereby the supply of water at their said tannery was diminished, to their irreparable injury, and prayed for an injunction, &c.

The answer denies the material allegations in the bill, and alleges :

*First.* That defendants were permitted by *Russel* to divert the water ; and,

*Second.* That the original bed of said water-course is not by and along said tannery—that the water flowed there by means of an ancient ditch.

The evidence establishes the following facts :

*First.* That the stream of water has its source upon the land of one *Russel*, and runs in a south-easterly direction through his land, thence westerly by the residence of one *Dodero*, thence to and along the land of the plaintiffs, where their tannery is erected, to the town of Santa Cruz.

*Second.* That the original bed of said stream at *Dodero's*, continues westerly, not by the way of Santa Cruz.

*Third.* That the water of said stream, from *Dodero's* to Santa Cruz, flows through an ancient ditch, where it has been accustomed to flow for at least fifty years.

*Fourth.* That the stream is small, varying from two to six inches of water, according to the seasons.

*Fifth.* That one *Majors* erected a mill in 1853, about one-half mile north-west of said stream, and in the fall of 1854, diverted a portion of the water of said stream, at a point upon the land of said *Russel*, by means of a ditch, and that afterwards a brickyard was established by the defendants, near the said ditch, and about two hundred and fifty yards from said stream, at which brickyard, the defendants used the water which flowed in the mill ditch, by the permission of said *Russel*.

*Sixth.* That *Majors* ceased to use said water, or keep up the dam across said stream, for the space of three months before said brickyard was established, the same having been kept up, and the water conducted to the brickyard by the agency of the defendants.

*Seventh.* That one *Fleck* had permission of plaintiffs to use the

water of said stream, provided it was used without injury to plaintiffs.

*Eighth.* The diversion of water by defendants from said stream, diminished the quantity which had been accustomed to flow in said ditch by said tannery, to the injury of the plaintiffs.

*Ninth.* The land of the plaintiffs on which the tannery was erected, is bounded by the ditch, and situated between *Dodero's* and Santa Cruz.

*Tenth.* The land of the defendants, on which the brickyard is situated, is not adjoining said stream.

*Colt & Peckham,* for plaintiffs.

*Watson,* for defendants.

HESTER, J.—The owners of water courses are denominated riparian proprietors. The land on opposite sides of a stream of water may be owned by different persons ; when such is the case, each proprietor owns to the middle or thread of the stream. *Angel on water courses,* §10.

The right of private property in a water course, is a corporeal right when it is derived from the ownership of the soil over which it passes ; it is an incident to the land ; *ib.,* §5 ; and it is sometimes called a natural easement in contradistinction to an artificial easement, which is a right in derogation of riparian rights, as a right to interfere with the accustomed course of running water, by diverting it, or keeping it back upon the land above, or by transmitting it altered in quantity or quality to the land below ; *ib.,* §141. Or it is a right to the use of a stream underived from ownership of the soil.

Riparian rights are applicable to artificial water courses as well as natural ones, and from which they are not distinguishable. A title may be gained by twenty years *user,* as well to the former as to the latter. *Ib.,* §206 ; 6 *Paige Ch.,* 435 ; 3 *Paige Ch.,* 605.

The plaintiffs' land joins the artificial water course made by the priests upon the first settlement of the country, to convey water to their mission. The length of time of its existence, elevates it to the character of a natural water course, insomuch that its water cannot now

be changed to the original bed, without affecting legal rights acquired by the owners of the land adjoining it, who may be regarded, to all intents and purposes, as riparian proprietors. The plaintiffs, therefore, are to be considered as such, their rights growing out of, and existing by, that relation.

Every proprietor of lands on the bank of a river, has naturally an equal right to the use of the water which flows in the stream adjacent to his lands, as it was wont to run, without diminution or alteration. No proprietor has the right to use the water to the prejudice of the proprietors above or below him, unless he has a prior right to divert it, or a title to some exclusive enjoyment. Though he may use the water while it runs over his land, he cannot unreasonably detain it, or give it another direction. Without the consent of the adjoining proprietors, he cannot divert or diminish the quantity of water which would otherwise descend to the proprietors below. The owner must so use the water as to work no material injury to his neighbor below him, who has an equal right to the subsequent use of the same water, as he has no property in the water itself, but a simple usufruct as it passes along. All the law requires is, that its use should be in a reasonable manner, which would not exclude domestic, agricultural and manufacturing purposes ; 3 *Kent Comm.*, 438. In 3 *Rawle*, 256, it was held that a person had a right to so much of the water of a stream running across his land, as was needful and proper for supplying his tan-yard and bark-mill. A right to its use may be acquired by prescription, affecting riparian rights. In such case, the natural right of the riparian proprietor becomes subservient to the acquired right of the manufacturer. *Ib.*, 442.

In *Arnold* v. *Foote*, 12 *Wend.*, 330, the facts were that the lands of the parties joined. A spring issued from the land of the defendant, and ran across his land, and upon the land of the plaintiff, where it was used by the latter to water his cattle and irrigate his lands. No more water ran from the defendant's spring than what was wanted for domestic use, for his cattle, and for irrigation. The defendant ploughed a furrow below the spring, and thereby diverted the water from its natural channel, and caused it to flow upon his own meadow. The

court said the water from his spring must continue to run into the plaintiff's premises ; and it must continue to water the land, no matter who may be its owner.   The defendant has a right to use so much as is necessary for his family and his cattle, but not for irrigation, if the plaintiff is thereby deprived of the reasonable use of the water in its natural channel.

In 4 *Mason*, 400, *Story*, J., says, " The natural stream existing by the bounty of providence, for the benefit of the land through which it flows, is an incident annexed to the land itself."   In 1 *Wils.*, 174, the defendant's defense was, that the stream issued from his land, and that by prescription he had a right to two pits of water for his cattle, &c. ; but the facts were that he had enlarged the pits.   The court said he had no right to enlarge the pits, and his defense failed. See also 10 *Wend.*, 264.   In the above mentioned case, in 6 *Paige*, the court say, " The law is well settled that the owner of the superior heritage has no right to detain or divert the water which passes through his land, to the injury of those who were accustomed to receive it upon their lands below."

These authorities fully establish the position that the plaintiffs, as riparian proprietors, have a right to a reasonable use of the water flowing in the ditch by their land, without diminution ; that *Russel* had no right, as riparian proprietor of the stream above the plaintiffs, to divert the water, or authorize others to do it ; and neither had the defendants or *Majors* such right, when such diversion of the water affected the riparian rights of the plaintiffs.

It is no excuse for the defendants that the plaintiffs have, since the commencement of their tannery, increased their capital, which necessarily required an increase of water, as the defendants are not in a position to avail themselves of this objection, they possessing no riparian rights—the rights of other riparian proprietors not being before the court for its consideration.   The defendants possessing no riparian rights, are therefore without excuse.

The testimony shows that the plaintiffs permitted one *Fleck* to divert a portion of the water from said stream, provided the plaintiffs were not thereby injured.   The testimony does not establish that the injury,

Kirby *vs.* Lindsay.

if any, which the plaintiffs sustained, by insufficiency of water, was the result of the abstraction of water by *Fleck*, whose use of the water was at fixed hours when it was not needed by the plaintiffs.

Having disposed of the various defenses of the defendants, one other inquiry will dispose of the case, which is, did the diversion of the water by the defendants, affect the rights of the plaintiffs to such an extent as to require, for relief, the extraordinary remedy by injunction.

The erection of the dam across the stream by the defendants, and diverting a portion of the water to their brick-yard and there using it, and the consequent injury to the plaintiffs by such diminution of water, are facts too fully established to be resisted. The amount of capital in fresh hides necessary to prosecute the business of this tannery, their liability to injury for want of fresh water, render the business expensive and precarious, and even ruinous, unless there is a sufficient supply of fresh water when needed. The testimony shows that the plaintiffs on various occasions, to save their hides and prosecute their business by a supply of fresh water, were constrained to abate the dam, and to cause the water to flow in its accustomed channel. This, however, seems not to have been effected without exciting bad feelings—the issue between the parties was, who should have the water. The plaintiffs being riparian proprietors, and the defendants not sustaining that relation, the question is of easy solution. The plaintiffs needed the water when they were not supplied with it, and that the defendants' diversion of it occasioned the want of supply, are facts which must be conceded.

An injury has been proven. An injury to the hides for the want of fresh water, when it may happen daily, is irreparable. No prudent man would devote his time and risk his capital upon such an uncertainty. The plaintiffs' business must cease or the injunction must be granted. The injunction heretofore ordered with some modification, is made perpetual.