WILLIAM E. FARRELL and others

*v.*

AUGUSTUS H. RICHARDS.

The right of every riparian owner to use the water flowing through his land for its proper irrigation, is subject to the limitation that his use for that purpose must be such as not essentially to interfere with the natural flow of the stream, or essentially and to the material injury of the proprietors below to diminish the quantity of water that goes to them.

Bill for relief. On order to show cause, heard on bill and affidavits on both sides.

*Mr. S. H. Grey*, for complainants.

*Mr. H. Richards*, for defendant.

THE CHANCELLOR.

The bill is filed by the owners and lessee of the property in Atlantic county long known as the Pleasant Mills, but now, also, as the Nescochague Mills, against Augustus H. Richards, to restrain him from diverting, to the damage of the complainants, as owners and lessee of the mill property, a stream known as the Forge stream, by which one of the two ponds of the complainants, known as the Forge pond, is supplied with water. From that pond the other, called the Pleasant Mills pond, and on which their mills are, draws part of its supply; and the mills, which are driven by water-power, depend wholly on the ponds for their power. The two ponds are connected by a ditch or canal. This connection between the ponds, and the use of the water in both of them to drive the machinery of the mills, have existed for over fifty years, though there was an interval of about ten years from the time when the mills were

burned to the time when they were rebuilt (which was in or about 1860) when the mill site was not used.

The defendant, by various conveyances to him from the year 1858, has become the owner of a large tract of land, of about two thousand five hundred acres, extending from the head of the Forge stream up and along that stream for about three miles and a half. This property, or a considerable part of it, is used by him for the production of cranberries. In 1876 (according to the evidence it was probably in the summer and fall), he dug a large ditch, extending from the upper part of that tract to the Forge pond. His object in digging the ditch was, to irrigate his land. He also, at the same time, for the purpose of diverting the water of the stream into the ditch, constructed, with stones, brickbats and pieces of fence-rails driven into the bottom of the stream by way of piling, a dam in the stream. He and his witnesses say that it extended only partially across the stream; but some of the complainants' witnesses testify that it is entirely across the main body of the stream.

In the summer of 1877, the complainants, William E. Farrell (he is the owner of two undivided thirds of the Pleasant Mills property) and Lucius H. Warren (lessee of the other third), were operating the mills as partners. They then, in the month of August, perceived a sudden and very considerable diminution of their water-power, which was found to be due to the decrease of the water in the Forge pond. The season being an unusually wet one, and they being unable to account for the diminution of the water, set on foot investigations which resulted in the discovery of the existence of the dam and ditch. The ditch was then found to be draining the water from the Forge stream in large quantities. In January, 1878, they filed their bill in this cause for relief, praying that the defendant may be restrained from interfering in any way with the natural and ancient flow of the water down the Forge stream, and from storing or retaining the water of the stream, and that the dam built by him, or so much of it as may be found to

interfere with the natural, ancient flow of the water in the stream, may be decreed to be a nuisance. They show, by the bill, a case of irreparable injury. On the filing of the bill, an order to show cause why an injunction should not be issued was made, and under it numerous affidavits were taken on both sides, which have been read without objection.

The defendant resists the application for an injunction principally on the ground that, in 1858, when he purchased part of his land, the owners of the mill-site were not using, and had not for several years previously thereto used, the water of the Forge pond for the production of power, and did not resume the use of it for that purpose until two or three years after he purchased his land, and after he had begun the cultivation of cranberries thereon, and expended his money in adapting his land thereto; that the diminution of the water is, in fact, but slight and immaterial, and that there is no actual loss of power, but an apparent one only, which is due to the fact that the complainants, Farrell and Warren, have put into the mills more and heavier machinery, requiring greater power to operate it than that which was formerly in the mills; that the complainants have raised the dam of the Forge pond; that the dam &c. are leaky, and waste the water; and that the defendant has the right to the water which he takes for the purpose of irrigation, for which purpose alone he diverts it; and that, after using it, he returns all the surplus to the Forge pond; and that, by means of some ditches which he has dug through his land, more water is contributed to the pond than the defendant uses from the Forge stream in irrigating his lands.

It appears to be established by the affidavits, .that the complainants' mill-site has existed for about half a century; that it has been used as such for all that time, except the period of about ten years before referred to; that the connection between the two ponds has existed since 1827, and that the defendant constructed the dam and ditch of which complaint is made.

Farrell *v.* Richards.

The dam was constructed by the defendant, not on his own land, but on the land adjoining his above, and the ditch commences on the latter land.    According to the defendant's testimony, the ditch is five or six feet wide.  Its capacity for withdrawing the water from the stream appears by the testimony of an engineer, sworn on behalf of the complainants.   He testifies that, in his opinion, there passed through it, on the 7th of August, 1877, the day on which the investigation into the cause of the decrease of the water in the Forge pond was made, about twelve hundred gallons a minute.    That it was capable of such diversion of the water is not denied.    Indeed, it appears, by the testimony of the engineer employed by and sworn for the defendant, that on the 1st of March, 1878, the quantity diverted was about eleven gallons a second, or six hundred and sixty gallons a minute.    The last-mentioned occasion, it may be remarked, was one on which the witness was making measurements and calculations, to be used in behalf of the defendant in this suit, and it does not appear that the conditions were not favorable to the defendant, for it does not appear whether the gate was entirely up or not.    The stream, at its entrance into the pond, is from twenty-five to fifty feet wide, and from three to five feet deep.    The engineer before mentioned, sworn for the complainants, testifies that at least one-seventh of all the water used at the mills is by the dam and ditch diverted therefrom, and that the loss of power is in proportion one-seventh.

The evidence shows that the defendant constructed the dam and ditch in the summer and fall of 1876.    The dam was made of material taken from the foundation of an old glass-works, and there appears to have been a very large quantity (a great many wagon-loads) of that material, stones and brickbats, thrown into the stream to make the dam. The evidence shows that it was built across the main stream (the stream is there divided by an islet, which, at high water, is overflowed), and on a sand bar.    The proof is that, as soon as the ditch began to withdraw the water

from the stream the effect was perceived at the mills, and in August, 1877, the effect was so great that the operations of the mills were seriously affected. These facts are conclusive as to the amount withdrawn, and the consequent injury to the complainants. The defendant has no right to so use the water as to diminish its quantity to the prejudice of the complainants. While every riparian owner has a right to use the water flowing through his land for the proper irrigation of his land, his use for that purpose must be such as not essentially to interfere with the natural flow of the stream, or essentially and to the material injury of the proprietors below to diminish the quantity of water that goes to them. 3 *Kent's Comm.* 439; *Merritt* v. *Parker, Coxe* 460; *Arnold* v. *Foot,* 12 *Wend.* 330; *Kauffman* v. *Griesemer,* 26 *Pa. St.* 407; *Miller* v. *Miller,* 9 *Pa. St.* 74; *Tyler* v. *Wilkinson,* 4 *Mas.* 400; *Embrey* v. *Owen,* 4 *E. L. & E.* 466; *Gillett* v. *Johnson,* 30 *Conn.* 180; *Blanchard* v. *Baker,* 8 *Me.* 253; *Colburn* v. *Richards,* 13 *Mass.* 420; *Anthony* v. *Lapham,* 5 *Pick.* 178; *Washb. on Easements* 300, 306; *Wood on Nuisances* 263.

Nor is there any ground of estoppel in the defendant's favor. That the mills were not in existence when he purchased his land, surely constitutes none, seeing that they had then been out of existence but about eight years. The right of the owners of the mill-site still existed. The defendant's expenditures, whatever they may have been, on his land, to adapt it to the cultivation of cranberries, were made with notice of their right. But if it had been otherwise, it would have given him no equity; that he, in fact, knew of their right appears from his affidavit, and it also appears, thereby, that he knew when he built the dam and constructed the ditch that he had no right to divert the water to their injury. He says, in his affidavit, that he well knew the ponds, and the mode in which the water was used at Pleasant Mills, and adds that he knew that the use he intended to make of the water of the Forge stream for irri-

gation could not reduce the volume of the water at Pleasant Mills pond.

I do not deem it necessary to discuss the evidence. A careful consideration of it leads me to the conclusion that the defendant, by means of the dam and ditch, has withdrawn from the stream so much water as seriously to affect the complainants' water-power, and to do them irreparable injury. He still claims the right to divert the water, but insists that, in so doing, he does the complainants no injury, and causes no diminution whatever of the water in the pond. The evidence satisfies me that, by the withdrawal of the water, he not only causes diminution of the water in the pond, but diminishes it to such an extent as to cause very serious injury to the complainants. The complainants, when he began to divert the water, had enjoyed the unquestioned right of the water for over half a century. They are entitled to the protection of this court.

It was held in *Shields* v. *Arndt*, 3 *Gr. Ch.* 234, 245, that a long enjoyment by a party of a right will entitle him to restrain a private nuisance, even though the defendant may deny the right. See, also, *Carlisle* v. *Cooper*, 6 *C. E. Gr.* 576, 581.

According to the defendant's own testimony, the right now claimed by the complainants has been used by them, without interruption, since 1860, a period of seventeen years prior to the time when its enjoyment was interfered with by the defendant's dam and canal, and he not only does not deny that it has existed for the length of time claimed by the complainants, but substantially admits it. The complainants, and those under whom they claim, have, for a long time, been in the undisputed possession and enjoyment of the right with respect to which the complaint is made, and the acts of the defendant, which are the subject of complaint, were done recently, before the filing of the bill.

The defendant should be restrained from diverting the water and maintaining the dam. There will be an injunction accordingly.