JASON BLOODGOOD, RESPONDENT, *v.* ANN AYERS AND OTHERS, APPELLANTS.

*Diversion of water — water cannot be diverted until it has become a water-course — right of the owner of a spring to a reasonable use of its waters.*

In this action, brought to restrain the defendant from diverting the waters of an alleged water-course, it appeared that there was a spring upon the defendant's land, about 120 feet from the line dividing the defendant's from the plaintiff's land. Water had for many years been conducted from the spring through a trough or leader about three inches wide to a watering trough, distant about twenty feet from the spring. The surplus water flowing from the spring disappeared in the ground, reappearing again near the division line, and flowing from that place in a well-defined channel to and over the lands of the plaintiff. The defendant diverted the waters of the spring and conducted them through logs to a point upon his lands, where they were discharged in such a manner as not to flow in the old channel or on the plaintiff's lands.

*Held,* that as the waters of the spring were diverted before they had reached or formed a natural stream flowing in a defined bed or channel with banks and sides, the plaintiff had no cause of complaint.

That even if it were assumed that there was a water-course at the spring, yet as the defendant was entitled to use so much of the water as was needed for domestic and agricultural purposes, it was erroneous to grant a judgment requiring an absolute return of the waters diverted, and forbidding even a reasonable use thereof.

APPEAL from a judgment, entered upon the trial of this action by the court without a jury, and from an order refusing to set aside the verdict of a jury upon two questions submitted to them.

*S. Crowell*, for the appellants.

*James B. Olney*, for the respondent.

LEARNED, P. J.:

This is an action in equity to restrain the defendants from con-tinuing to divert the waters of an alleged stream or water-course. Two questions were submitted to a jury, who found each for the plaintiff. The court found other facts, and rendered a decision sub-stantially according to the prayer of the complainant.

The plaintiff's land and the land of the defendant Ayers adjoin. On the land of Ayers, and about 120 feet from the dividing line, there is, and has been for over fifty years, a spring. For some forty years prior to the alleged diversion the owners and occupants of the Ayers farm had kept and maintained a watering-trough some ten or twenty feet from that spring, to which the water had been brought by a trough or leader about three inches wide, extending from the spring to the watering-trough. The end of this at the spring was usually packed around with clay, to prevent the escape of the water except through the leader. On each side of the trough the ground rises, more on the west side ; and the ground also slopes south-east-erly towards the line fence. The jury found that a stream or water-course flowed in a well defined bed or channel down to and over the plaintiff's land, with banks and channels, and that the same was sup-plied from the natural overflow of the spring.

The claim of the defendants is, that the overflow at the trough disappeared in the ground, and ran under ground for some 100 feet ; that it thus did not have the character of a running stream. It would seem, however, not to be disputed, that about twenty feet from the division line the water flowed on the surface of the ground. It crossed the division line, and at about twenty feet therefrom on the plaintiff's land was received by him in what is called a reservoir and was used by him.

About 1879 the defendants put pump logs in the spring and con-ducted the water south-westerly through their land, for a considerable distance, say about nine chains, and discharged the same, after using it, in such a manner that it did not return to the natural course or to the plaintiff's land. This diversion the plaintiff seeks to restrain.

It should be noticed that the defendants' act is claimed to be, not simply the use of a reasonable quantity of water for cattle and for domestic purposes ; nor is it claimed to be simply the using of that quantity of water at a different place from that where it had

been formerly used. But the alleged wrong is that the defendants, not merely use what they need, but divert the water which they do not need and do not use, so that, instead of flowing on the plaintiff's land, the surplus is carried off in another direction and does not come upon his land at all.

The question then is, not whether the defendants may not use all that they need 'for these purposes, but whether they may divert that surplus which they do not need, and which, but for their diversion of it, would flow on the plaintiff's land. (*Arnold* v. *Foot*, 12 Wend., 330.)

The question submitted to the jury did not distinctly present the point whether the stream or water-course flowed *from* the spring; and the defendants by several requests asked the court to find that it did not. These requests were refused. And the defendants now urge that there is no finding and no evidence that any surface stream or water-course flowed within 100 feet of the spring. It is true that the jury found that the stream or water-course which flowed on plaintiff's land was supplied from the natural overflow of the spring. This however is not enough to maintain the plaintiff's action. For instance, the surface water which runs down a man's hill may reach a water-course on his land and that water-course may run upon his neighbor's land. Yet these facts would not prevent the man from detaining the surface water by ploughing or otherwise. So if there be a spring on a man's land, and the overflow therefrom finally reaches a water-course, still the owner of the land may use or divert the water of the spring, although such use or diversion may prevent the water from reaching the water-course. This is one of the instances decided in *Broadbent* v. *Ramsbothom* (11 Exch., 602), which has been often cited with approval. (See *Village of Delhi* v. *Youmans*, 45 N. Y., 362.) To the same general effect is *Rawstron* v. *Taylor*( 11 Exch., 369). And it is held in this state that one may by filling in his land prevent the draining upon him of the surface water from higher adjacent land. (*Barkley* v. *Wilcox*, 86 N. Y., 140.)

This is contrary to the doctrine held in some states, but it is in accord with the views above stated, viz., that until water has reached and formed part of a water-course it may be diverted. (*Goodale* v. *Tuttle*, 29 N. Y., 459.)

The question then must be whether, at the point where the defendants interfered with the water, viz., at the spring, there was a natural water-course, as defined in *Barkley* v. *Wilcox* (86 N. Y., 143 ; see the language at page 147). We think that the jury has not so found, nor can it be so found upon the evidence. · That the waters of the spring eventually reached a water-course we may assume. But there was no water-course at the spring. The whole water had been for years turned into a watering trough. The surplus or overflow disappeared in the ground. Farther on it probably appeared on the surface. But this does not make the case like that of *Macomber* v. *Godfrey* (108 Mass., 219), where an *existing* water-course spread out over a level meadow with no defined channel, and yet was held to have preserved its character of a water-course.

The spring which rises on a man's land, like the rain which falls on it, are his. It is only when the water, coming, as probably it always does, from the rain in its origin, has actually formed itself into a "natural stream flowing in a defined bed or channel, with banks and sides," that its use is restricted by those rules which the plaintiff here seeks to enforce.

There is another point. The defendants, by the judgment, are decreed to return the waters of the spring back to their natural bed as they ran prior to the diversion. Now, assuming even that there was a water-course at the spring, the defendants were entitled to use so much as was needed for domestic and agricultural purposes. They could use such amount where they chose. Possibly by carrying the water to a distance there might be some waste. But the question would be whether the use was unreasonable or the waste unnecessary. ( *Wadsworth* v. *Tillotson*, 15 Conn., 366.) Or as is said in *Gillett* v. *Johnson* (30 Conn., 183), whether the water was used in a reasonable manner so as not to deprive the owner below of a sufficient supply. The judgment, therefore, should not have forbidden a reasonable use and should not have required an absolute return of the waters.

We think that the judgment should be reversed and a new trial granted, costs to abide the event.

Present — LEARNED, P. J., BOOKES and LANDON, JJ.

Judgment reversed, new trial granted, costs to abide event.