JOHN BAYHA, Appellant, v. WILLIAM TAYLOR *et al.*, Respondents.

### Kansas City Court of Appeals, May 20, 1889.

1. **Equity:** JURISDICTION OF, TO CANCEL SPECIAL TAX BILLS: ADEQUATE REMEDY AT LAW. Equity will entertain jurisdiction of a bill to declare void and cancel certain special tax bills issued against certain lots of the plaintiff for their share of the cost of the construction of a certain district sewer. Such bills, though void, being an apparent lien on the land and thereby clouding plaintiff's title, furnish ample ground for the interposition of equitable relief.

2. **Municipal Corporations:** CHARTER OF KANSAS CITY: SEWER ORDINANCE: NATURAL COURSE OF DRAINAGE: QUESTION OF LAW AND FACT FOR THE COURTS: PRINCIPAL COURSES OF DRAINAGE: TAX BILLS VOID. The charter of the City of Kansas required that a district sewer should connect "with a public sewer, or other district sewer, or with the natural course of drainage." The ordinance, authorizing the construction of the sewer for the payment of which the tax bills involved in this case were issued, provided for its connection with the stream or ravine on the north line of Fifth street in the center of the alley between H. and G. streets. *Held:*

    (1) The meaning of the words, "the natural course of drainage," is a question of law, and whether any given connection of a sewer with the natural course of drainage in accordance with that meaning, is a question of fact, and both questions are questions for the determination of the courts, and not of the municipal legislature.

    (2) That "the natural course of drainage" of the charter is the natural course of drainage made by the common council the base or basin of some part of the sewer system.

Bayha v. Taylor.

(3) The words, "the principal courses of drainage," used in the charter, mean those lines along which the principal drainage does or would flow ; and in contradistinction thereto, "the natural course of drainage" means the natural road or passage for the drainage, with which sewers may be connected.

(4) That the stream or ravine, with which the ordinance provided that the district sewer should connect, is in no sense the base or basin of any part of the sewer system and is not such connection as the charter requires and the ordinance was for that reason null and void and the tax bills invalid.

8. ——— : ——— : SUBSEQUENT PROCEEDING CAN NOT VALIDATE PRIOR VOID ONE. The fact that after the completion of the district sewer and issuance of the tax bills and before the institution of this suit, the common council had a public sewer constructed and extended to a connection with the district sewer so that the latter sewer was in fact connected as the charter directed, can not avail the defendant as said ordinance and tax bills were absolutely null and void when issued and the common council by no subsequent proceeding had power to give validity and life to a void ordinance or to void tax bills.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED ( *with directions* )

*Gage, Ladd & Small,* for the appellant.

(1)    After hearing this case tried on its merits on the issues made by the pleadings, the court below refused to decide it but dismissed the petition, without prejudice, for the reason as stated by the judge in rendering his opinion that if these tax bills are void, as claimed by the plaintiff, he can successfully defend against them, when suit is brought to enforce their collection, *i. e.*, that he has an adequate remedy at law.    But, even if this were an adequate remedy, which we deny, it was no reason for refusing to decide this case, because no such defense was set up by the defendants, and the case had been tried by both sides on its merits.    *Blair v.*

Bayha v. Taylor.

*Railroad*, 89 Mo. 393, and cas. cit. (2) But the plaintiff had no remedy at law at all. The city charter, under which the tax bills purport to be authorized, prescribes no means of appealing from or questioning the validity of such tax bills; it declares that the same shall be a lien upon plaintiff's property and *prima facie* evidence of their own validity, and shall bear interest, if not paid within thirty days after issue, at the rate of ten per cent. per annum, and if not paid within six months, at the rate of fifteen per cent. per annum. City Charter, sec. 2, art. 9. Now the facts which plaintiff alleges vitiate these tax bills rest altogether in parol evidence. All the record proceedings, the ordinance, the contract, the tax bills themselves, are admittedly regular on their face. There has been some conflict in the decisions about the propriety of a court of equity entertaining a bill to cancel a deed or incumbrance, as a cloud on plaintiff's title, when the face of the instrument, or record of the proceedings upon which it is based, discloses the vice which renders it void. But it is not probable that any court of equity ever refused to act in such a case as this, where the whole matter rests in parol. *Beedle v. Mead*, 81 Mo. 303-4, and cas. cit.; *Mason v. Black*, 87 Mo. 330, and cas. cit.; *Bank v. City of Kansas*, 73 Mo. 559, and cas. cit. (3) There is no case in our state reports where an apparently valid (but in fact void) special tax bill or assessment has been removed and cancelled as a cloud, but the following cases from other states show that such tax bills or assessments are not exempt from the ordinary rules of equity jurisprudence. *Sewall v. St. Paul*, 20 Minn. 511; *Mayall v. St. Paul*, 30 Minn. 298; *Pier v. Fond du Lac*, 38 Wis. 477; *Crook v. Andrews*, 40 N. Y. 549; *Hatch v. Buffalo*, 38 N. Y. 276; *Allen v. Buffalo*, 39 N. Y. 386; *Newell v. Wheeler*, 48 N. Y. 491; *Hassen v. Rochester*, 67 N. Y. 536; *Frost v. Leatherman*, 55 Mich. 33; *Dull's Appeal*, 113 Pa. St.

518, and cas. cit. ; *Lamb v. Ferrel,* 21 Fed. Rep. 5, and cas. cit. ; 2 Am. and Eng. Encyclopedia of Law, p. 298, "Bill to Remove Clouds from Title." Our supreme court in *Bayha v. Kansas City Court of Appeals* (*mandamus* case) settles this point. See opinion. The other cases above cited are equally emphatic, but we submit, that the jurisdiction of a court of equity, in such cases as presented by the record in this case, is so ancient and elementary, that we need not quote further from them. It would indeed "be a reproach upon our jurisprudence," if the owner of real estate were compelled to sit quietly down with folded arms, and permit the owner of a tax bill which is an apparently valid lien upon his property, bearing interest at the rate of fifteen per cent. per annum, but in fact void, to hold such tax bill as a cloud over his title as long as his pleasure might dictate, or until barred by the statute of limitations, which in this case is five years (there being no special limitation for bringing suits on sewer tax bills contained in the charter of Kansas City. (4) The city had no power under its charter to construct a district sewer terminating and discharging in the so-called "stream or ravine," and the tax bills issued against plaintiff's property to pay a part of the cost thereof are void. The connection required is a sewer connection, an artificial connection, a connection which is itself a part of the system. The pipe is no legal outlet, could be stopped up at any time. *Ratekin Case,* 30 Mo. App. 416 ; *Heman v. Payne,* 27 Mo. App. 481. (5) The fact, that months after the sewer in question was completed and the tax bills issued, the city caused the Gillis street sewer to be extended southward to connection with the sewer in question, cannot render the ordinance valid. Not even the legislature itself can breathe the breath of life into a void sewer tax bill founded on a void ordinance, much less can the City of Kansas. *St. Louis v. Clemens,* 52 Mo. 134 ; *Bishop v. City Treas.,* 8 At. Rep. 692 ; *Harper's Appeal,* 1 Cent. Rep. 585.

*Karnes & Krauthoff, Lathrop & Smith,* for . respondent.

(1)   The court below found the issues for the defendants, and dismissed the bill without prejudice, on the ground that plaintiff had an adequate remedy at law. This the court had a right to do at its own discretion, notwithstanding the answer was a general denial, and notwithstanding the case of *Blair v. Railroad,* 89 Mo. 383, decided at the April term, 1886. Under section 3521 of the code it might have been reasonably contended that prior to the decision in the *Blair case,* under a general denial, notwithstanding the old rule in equity pleading, the defense of remedy at law was proper, and that such defense was not "new matter constituting a defense or counter-claim." "The powers of a court of equity ought not to be resorted to unless a special case is made by the bill, showing that, for the reasons specifically set forth, the plaintiff has no adequate and complete remedy at law." SHAW, C. J., in *Woodman v. Saltonstall,* 7 Cush. 181, 183 ; *Underhill v. Vancourtland,* 17 Johnson, 435. (2) So that after all, the first question to be determined is : Has the plaintiff an adequate remedy at law ? It is to be remarked at the outset that in all the special tax-bill cases which have come before the appellate courts in Missouri, from St. Louis, St. Joseph and Kansas City, and from all other places in the state where resort had to be had to the courts to enforce the lien, a property-owner has asserted his defense to the validity of the tax bill against his property in an action at law. Even where the defense was that the ordinance was unreasonable and, therefore, void, and the facts rendering it void had to be shown by parol, the property-owner was satisfied with his legal remedy when sued upon the tax bills. *Corrigan v. Gage,* 68 Mo. 541. And where sewer tax bills were assailed on the ground that the

sewer was not made to connect with the natural course of drainage, relief was not sought by bill in equity, but the defense was made at law. *City v. Swope*, 79 Mo. 446; *Robinson v. Milwaukee*, 61 Wis. 585. (3) The fourth ground taken by appellant's counsel in their brief, on page 17, is: "The city had no power, under its charter, to construct a district sewer terminating and discharging in the so-called "stream or ravine," and the tax bills issued against plaintiff's property to pay a part of the costs thereof are void." If this position be well taken, the proper remedy would be not by bill in equity, but by *certiorari*, because the ordinance, providing for the construction of the sewer in district 71, would show this fatal defect upon its face. *Betts v. Bagley*, 12 Pick. 572; *Young v. St. Louis*, 47 Mo. 492; *State ex rel. v. City of Kansas*, 89 Mo. 34. (4) Under the city charter the common council had the power "to cause a general sewer system to be established, which shall be divided into three classes, to-wit: Public, district and private sewers." Acts of 1875, p. 256. The council, in providing that the sewer should connect with "the stream or ravine on the north line of Fifth street, in the center of the alley between Harrison and Gillis streets," was exercising a legislative function, performing a *quasi* judicial act, and it thereby determined that such stream or ravine was the natural course of drainage. Its judgment, in this regard, will not be set aside by a chancellor, even in passing upon the merits, unless the case is an extreme one, and unless the determination of the council is clearly shown to have been wrong. *Kavanaugh v. Brooklyn*, 38 Barb. 237; *McCormick v. Patchin*, 53 Mo. 33, 36; *Imler v. Springfield*, 55 Mo. 119; *Foster v. St. Louis*, 71 Mo. 157; *Stewart v. Clinton*, 79 Mo. 603, 612. (5) The question is, upon the merits, has this stream or ravine been satisfactorily shown not to have been, as a fact, the natural course of drainage. As to its sufficiency, the council,

under the authorities, must, in the exercise of its legislative, *quasi* judicial functions, be, in the first instance, the sole judge. *Horton v. Mayor*, 4 Lea (Tenn.) 39, 48-9. The facts of the case, which were proved beyond question, clearly show this "stream or ravine" to be the natural course of drainage, under the rulings of courts. "A water course is defined to be a channel or canal for the conveyance of water, particularly in draining lands. It may be natural as when it is made by the natural flow of the water," etc. *Earl v. Dottert*, 1 Beasley (N. J.) 280, 283. (6) It is no ground of objection to the tax bills that the outlet at the northeast corner of the ravine at Third and Gillis streets was on private property. *Gillett v. Johnson*, 30 Conn. 180 ; *Benson v. Railroad*, 78 Mo. 512, 514 ; *Village v. Borden*, 94 Ill. 26, 34 ; *Haskell v. New Bedford*, 108 Mass. 208. (7) The sewer in sewer district number 71 was connected with a public sewer of the City of Kansas, in the latter part of November, or about the first of December, 1885, and before process was served on contractor, William Taylor, one of the defendants, so that at the time of the trial of this cause the district sewer had ceased to empty into the natural course of drainage, and a further consideration of that question by a court of equity, originally called upon to sustain a bill to declare the tax bills void, ought not to be allowed. The plaintiff has exactly what he desired, and that is connection with the public sewer instead of the natural course of drainage. *Weber v. Schergens*, 59 Mo. 389, at p. 393 ; *Kiley v. Cranor*, 51 Mo. 541 ; *Moss v. Shear*, 30 Cal. 467 ; *Van Moren v. Johnson*, 15 Cal. 311. In the case at bar, the fact of the connection of the district sewer with the public sewer, several months before the trial, was duly embodied in an amended answer, and proved at the hearing. That an ordinance providing for the extension of the Gillis street public sewer southward had actually been passed

and the completion of the sewer to a connection with the sewer in district 71 was in contemplation when the ordinance for the sewer in district 71 was passed.

PER CURIAM.—This was a suit in equity begun in the circuit court of Jackson county, the object of which was to have certain special tax bills declared void and cancelled. The plaintiff is the owner of certain lots of ground in Kansas City. The tax bills were issued in favor of the defendant, Taylor, against the plaintiff as the owner of the lots for their share of the cost of the construction of a certain district sewer.

The tax bills were held by the other defendant to which Taylor had assigned them as collateral security.

The circuit court after hearing the cause on its merits dismissed the petition, without prejudice for the reason that if the tax bills were null and void as alleged by the plaintiff he had an adequate remedy at law and therefore was not entitled to the relief asked. This was unquestionably error. For the special tax bills, though void, being an apparent lien on the land and thereby clouding plaintiff's title, furnished ample ground for the relief he seeks. And so it has been decided by the supreme court of this state, since this case was originally submitted. *State ex rel. v. Kansas City Court of Appeals* (not yet reported). The question now remaining in the case and which we have to decide is whether said tax bills are valid.

The sewer in controversy on account of which the tax bills were issued was a district sewer, which the charter of the City of Kansas required should connect "with a public sewer or other district sewer or with the natural course of drainage." The ordinance directing the construction of the sewer provided for its connection with "the stream or ravine on the north line of Fifth street, in the centre of the alley between Harrison and Gillis streets." The claim is made that the connection

provided by the ordinance is not such a connection as was required by the charter, that the ordinance for that reason was void, and that the tax bills are invalid. The charter of the city is its organic law outside of whose provisions it is powerless to act, and if it be true that the connection provided by the ordinance was not such as that required by the charter, then the ordinance was void and the tax bills invalid. *City of Kansas to use v. Swope*, 79 Mo. 448.

The charter required the connection to be with a public or other district sewer, or with the natural course of drainage. The connection provided by the ordinance was neither with a public nor district sewer and the question is, was it with the natural course of drainage.

If, as contended by defendant's counsel, the ordinance should be deemed a declaration of the legislative authorities of Kansas City that the connection was with the natural course of drainage, the question arises: What effect has such declaration? Is it binding and conclusive? The requirement of the charter is to connect with the natural course of drainage in fact and in reality, and not with that which the mayor and council may declare by ordinance to be the natural course of drainage. Since the charter provisions control absolutely, and the charter has commanded the connection named, that connection had to be in fact made.

The requirements of the charter can no more be evaded by declarations contained in an ordinance than in any other manner. The meaning of the words "the natural course of drainage" is a question of law, and whether any given connection of a sewer is with the natural course of drainage in accordance with that meaning is a question of fact, and both questions are questions for the determination of the courts, and not of the municipal legislature. In the *Swope case, supra*, the connection of the sewer was by ordinance directed to be

made with the "old bed of Turkey creek," but the court held that such connection was not with the natural course of drainage.

The real question in this case, therefore is, was the connection of the sewer, provided by the ordinance, with the natural course of drainage in the meaning of those words as used in the charter of Kansas City?

In order to determine the sense in which these words are used in the charter it is necessary to examine the provisions of the charter so far as they bear on the subject, and to consider all such provisions together in the light of the object intended to be accomplished thereby.

The provisions of the charter bearing upon the subject are found in article 9 of an act to revise and amend the charter of Kansas City, approved March 24, 1875. Laws of Mo. 1875, pp. 256, 257. Section 1, provides: "The common council shall have power to cause a general sewer system to be established, which shall be divided into three classes, to-wit, public, district and private sewers.

"Public sewers shall be established along the principal courses of drainage, at such times, to such extent, of such dimensions, and under such regulations as may be provided by ordinance, and these may be extensions or branches of sewers already constructed or entirely new throughout, as may be deemed expedient." After providing the means of payment for the public sewers out of the public revenue the section continues: "No sewer shall be run diagonally through private property, when it is practicable without injury to said sewer to construct it parallel with one of the exterior lines of such property; nor shall any public sewer be constructed through private property, where it is practicable to construct it along or through a street or other public highway." Section 2 provides: "District sewers shall be established within the limits to be described by

ordinance connecting with a public sewer or other district sewer, or with the natural course of drainage, as each case may be." After providing for changing the limits of the districts, the section continues: "The common council shall cause sewers to be constructed in each district, whenever a majority of the property-holders, residents therein, shall petition therefor, or whenever the common council may deem such sewer necessary for sanitary or other purposes; and said sewer shall be of such dimensions as may be prescribed by ordinance, and may be changed, enlarged or extended, and shall have all the necessary laterals, inlets and other appurtenances which may be required." The section then provides for the computation and assessment of the cost of the work, and the issuance of certified bills therefor, which provisions so far as material we have already noticed.

Section 3 provides: "Private sewers connecting with public and district sewers may be constructed under such restrictions and regulations as the common council may prescribe by general ordinance; but the city shall be at no expense in the construction, repairing and cleaning the same."

Section 4, the last section of the article, provides: "The common council shall have power to condemn private property for use, occupation or possession in the construction and repair of public sewers, in the same manner as other property is condemned for other public uses."

By these provisions the common council are given power to cause a general sewer system to be established. In many and in material respects the common council are given large discretion, while in other respects they are left no discretion, and they are directed to act in the manner prescribed. It will be noticed that the system must be divided into three classes, public, district and private sewers, and that the public and district sewers, which are to be constructed by the city, must be ordered

by the common council by ordinance; for it is provided that their dimensions, etc., shall be established by the common council by ordinance.

It may be well to here state that the sewer system established by Kansas City is a system that may be called the combined system, being so constructed as to carry off in the same sewer both surface water and sewage proper.

The object of the system, of course, is the object of all sewer systems, to collect in the sewers the sewage of the city, to conduct it through the sewers out of the city to some safe receptacle, and thus to finally dispose of it.

In order to accomplish this object the system had to be established on one or more such receptacles, natural or artificial, as its base or bases. To establish an artificial receptacle as the base of the sewer system of such a city as Kansas City would cost a large sum of money, and in the absence of any provision in the charter of the city authorizing it, it is clear that there is no authority for it. The receptacles on which the sewer system must be based are, therefore, natural receptacles.

And for the same reason the receptacles should be such as to naturally, without artificial aid, safely carry off and finally dispose of the sewage discharged into them. In other words the sewer system authorized by the charter must rest upon one or more water courses capable of carrying off the sewage discharged into them as sewer basins. The evidence shows, if indeed evidence of such fact was necessary, that the Missouri river is the natural basin into which the drainage of the whole Missouri valley, including Kansas City, is emptied, and that ultimately that river must receive all the sewage collected in the sewer system of that city. That river consequently would make the best base for the city's sewer system, although it may be that there are tributaries of the river suitable to answer the same purpose, or if more than one base for the system be desirable, to be one of such bases.

Bayha v. Taylor.

We do not wish to be understood as intimating that there can be only one base for the system or that the Missouri river must be that base.

Naturally and properly the public sewers, which are to be constructed at the public expense, are the main stems or trunks of the system ; they are "to be established along the principal courses of drainage," and with them the district and private sewers are to be connected as branches of the system. The charter does not in express terms provide any connection for the public sewers, but for the reasons stated it is clear that, in order to make the system complete and perfect, the public sewers, the main stems of the system, must rest upon one or more receptacles or basins as the base or bases of the system, and must connect therewith.

It is equally clear that the system can never become complete without every district sewer connecting directly, or indirectly through some other such sewer, with a main or public sewer, or with one of the basins or bases of the system. As to these general views there is no serious conflict of opinion between opposing counsel. The principal contention between them is as to the plan to be pursued in constructing the different parts of the system.

Counsel for plaintiff contend that no district sewer can be built unless it be connected directly or indirectly through another sewer, with a main or public sewer, or with the receptacle or basin of such sewer, so that each district sewer as built will form a part of the system. The defendant's counsel, on the contrary, contend that, since the sewer system is not the work of a day, but of years, a district sewer may in the discretion of the common council be built without being thus connected at once, the connection being left for the future as necessity may require.

The position of plaintiff's counsel is that, where a district sewer is to be connected with a public sewer,

the public sewer must be first constructed, in other words, that the main trunks or stems of the system must be constructed first, and the branches afterwards. The position of the defendant's counsel is, that the council may in their discretion build the branches first and the trunks of the system afterwards.

As already stated, the conflict between these two positions must be determined by the answer to the question : What does the charter mean by " the natural course of drainage ? " In support of their position, plaintiff's counsel contend that these words mean as used in the charter the natural receptacle of the drainage of the whole of the city ; while the defendant's counsel contend that they mean any natural course for the drainage of any portion of the city.

The charter requires a district sewer to connect with " a public sewer or other district sewer, or with the natural course of drainage, as each case may be." The common council are given absolute control over both public and district sewers by other provisions of the charter, there was no need of an express provision authorizing connection therewith in order to enable the common council to make it. They had the power to make it without any express provision to that effect. The provision, clearly, was not made for the purpose of enabling the common council to make the connection, but was made as a command directing and requiring the common council to make it, unless they made the connection with " the natural course of drainage." This connection is provided in lieu and instead of the connection with a public or other district sewer. They are both required for the same purpose and to accomplish the same object, and if possible the words " the natural course of drainage " should receive such a construction as to effect that object.

The primary object of the connection with a public or other district sewer is to make the sewer thus connected a part of the sewer system ; the ultimate object

is to discharge, by means of the sytem, the sewage collected in the sewer added to and connected with the system, into one of its bases or basins.

That the primary object of the other connection is the same, is made clear by the charter not only requiring the sewer to be built connecting in the manner named, but also providing that such sewer may be connected with by other sewers, district and private. No district sewer under these provisions can be built disconnected from the system. Every such sewer is to be built connecting, for the purpose of being connected with, as a part of the sewer system. The time of making the connection is not left discretionary with the common council, but the sewer must be built connecting in the manner provided : indeed this seems to be the very essence of the provisions requiring the connection. The common council, without such provisions, might have made the connection required thereby. The only effect of such provisions, we may again repeat, is to restrict the power of the common council to the building of district sewers connecting in the manner named.

Such being the plain object of the requirement of the charter, how could it be accomplished by connecting a district sewer with any course of drainage other than one which is one of the bases or basins of the system? In no way. This we think clear. Therefore, we hold that "the natural course of drainage" of the charter is the natural course of drainage made by the common council the base or basin of some part of the sewer system.

In support of this conclusion, we may add that the connection required by the charter is with "the" and not "a natural course of drainage." The common council can not build district sewers connecting with any natural course of drainage they may select, but they can only build district sewers connecting with a public or other district sewer, "or with *the* natural course of drainage, as each case may be."

Bayha v. Taylor.

In an argument against the conclusion reached by us the defendant's counsel have laid much stress upon the words, "the principal courses of drainage," used in the first section of the article of the charter concerning sewers. The point is made that, since the first section provides for the construction of public sewers "along the principal courses of drainage," the second section can not intend by "the natural course of drainage" the base or basin of the sewer system, or of some part of it.

It is unfortunate for the same word or words to be used in the same statute in different senses, as it generally gives rise to doubt and confusion in the construction of the statute. But so clearly does it appear from the context of the two sections of the charter, and from the different objects sought to be accomplished by them, that the word "course" is used in different senses that no difficulty can arise therefrom.

The word "course" has various meanings. The third definition given of it in Webster's Dictionary is : "Motion considered with reference to its direction ; line of progress, direction." It is in this sense that the word is used in the first section. By the principal courses of drainage are meant those lines along which the principal drainage does or would flow.

In the context there is nothing concerning nature.

In the city there may be a vast section with no natural drainage, and for this reason a sewer would be all the more needed, and in their discretion the common council would have the right to build a public sewer along that line, in that course, which would make the sewer a main stem of the system, a principal means or course for the drainage of the city. A principal course of drainage in the meaning of the charter, in other words, need not be natural but may be artificial. Again with the principal courses of drainage there is to be no connection ; there is nothing to connect with, there is merely a line, in the general direction of which the

public sewers are to be built. Public sewers, when practicable, are to be constructed along or through the streets or other public highways, and can, therefore, follow only in a general sense the principal courses of drainage.

The second definition of the word "course" found in the dictionary mentioned is: "The ground or path traversed; track-way," as a race course: "The round course at Newmarket."

As synonyms of the word are given: "Way; road; route; passage." It is in this sense that the word is used in the second section. By "the natural course of drainage" is meant the natural road or passage for the drainage. The course must be a natural passage, with which sewers may be connected. Kansas City is bounded on the north by the Missouri river. The stream or ravine with which the ordinance directed the sewer in suit to be connected, originally was as follows: It connected with the Missouri river several hundred feet west of Gillis street, a street running north and south, and thence extended to the southeast, crossing Gillis street north of, but near, the corner of that street and Third street, to a point near which the connection was directed, where it divided into two branches extending in different directions on into the city. In its course the stream did not follow any street or alley but extended diagonally across private ground. Sometime before the passage of the ordinance directing the construction of the district sewer in suit, a public sewer had been constructed in Gillis street extending from the Missouri river to the centre of Third street, and pending the construction of the said district sewer the public sewer was extended up Third street for a half a block to the alley between Harrison and Gillis streets. The public sewer took the place of the stream or ravine as a means or course of drainage from Third street to the Missouri river. That portion of said street or ravine

extending from Third street to the southeast was in no sense the base or basin of any part of the sewer system. The basin or base of that part of the sewer system in that portion of the city was at the other end of the Gillis street public sewer.

As a result of our conclusion, we must hold that the connection for the sewer in controversy provided by the ordinance was not such a connection as the charter requires, and that the ordinance was for that reason null and void. *City of Kansas to use, etc., v. Swope,* 79 Mo. 447.

It follows that the tax bills must be held invalid unless it be for an additional reason urged in support of them by defendant's counsel. After the completion of the district sewer and the issuance of the tax bills, but before the institution of this suit, the common council had the public sewer constructed and extended from Third and Gillis streets along the ravine, mentioned above, to a connection with the said district sewer; and so the latter sewer was in fact connected as the charter directs, at the time of the institution of this suit. For this reason the defendant's counsel urge that no objection can be made to the tax bills, and especially that no such objection can be made in a court of equity. But the trouble with this position is that the tax bills were absolutely null and void when they were issued, because the ordinance directing the construction of the sewer was null and void. There was no ordinance. There were no tax bills. The common council by no subsequent proceeding of theirs had the power to give a validity and life to a void ordinance or to void tax bills. *St. Louis v. Clemens,* 52 Mo. 134.

The plaintiff is entitled, for the reason given, to a judgment declaring the tax bills each null and void, and ordering them to be cancelled. The judgment of the circuit court is reversed and the cause remanded with directions to enter such judgment.