## KIMBER L. BARTON et al., Respondents, v. KANSAS CITY et al., Appellants.

Kansas City Court of Appeals, May 30, and December 19, 1904.

1. **TAXBILLS: Kansas City Charter: Sewers.** The charter of Kansas City authorizes a construction of district sewers when the city council shall deem them necessary for sanitary or other purposes. On the evidence a sewer mentioned in the opinion was not a sewer for either sanitary or drainage purposes as required by the ordinance, and the taxbills issued to pay for its construction were void.

2. ———: ———: ———: **Subsequent Connections.** The fact that after the construction of the sewer the park board may have connected catch basins along the street gutter with the sewer, can have no curative effect on the prior work.

3. ———: ———: ———: ———. Nor can the fact that such connections were made by the park board before the taxbills were issued avail to give them any validity whatever, as the contractor must lose for the invalidity which attached to the work as it stood completed and disconnected from any subsequent consideration.

4. ———: ———: ———: ———. The City of St. Joseph v. Owens, 110 Mo. 445, is distinguished, and attention called to the fact that the charter of St. Joseph requires that sewers "shall be of such dimensions as may be prescribed by ordinance," while the Kansas City charter provides that the sewer "shall be of such dimensions, material and character as shall be prescribed by ordinance."

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover*, Judge.

AFFIRMED.

*Clarence S. Palmer* and *R. J. Ingraham* for appellants.

(1) The recital in the ordinance that the common council deemed the sewer necessary for sanitary and drainage purposes did not render the ordinance invalid. (2) There could be no question that a sewer which carries the street drainage off from the street and deposits it in a running stream and which furnishes the means of draining stagnant pools of water, is a benefit to the public health. Courts take judicial notice of such facts. Land & Stock Co. v. Miller, 170 Mo. 240, 77 S. W. 721. (3) The charter, section 10, article 9, provides that district sewers shall be built "whenever the common council may deem such sewers necessary for sanitary or other purposes." The council found this sewer necessary for sanitary and drainage purposes. There is no allegation of fraud. The testimony of plaintiffs themselves show that the sewer serves the purpose both of drainage and sanitation. The sewer was built exactly as provided by ordinance. (4) The charter places the responsibility upon the common council of determining the method of constructing the sewers, and unless the ordinance passed by that body was absolutely unreasonable, it will be sustained by the court. Heman v. Schulte, 166 Mo. 409. (5) This sewer not only need not have been built as a public sewer, but could not have been so built under the Kansas City charter. (6) As to whether a sewer is a district or public sewer, our Supreme Court has sustained the judgment of the common council to a very great degree. Heman v. Allen, 156 Mo. 534; Land Co. v. Kansas City, 172 Mo. 523. (7) Whether the sewer lying in a single sewer district should be built as a district sewer or a joint district sewer was a question for the council. Prior v. Construction Co., 170 Mo. 450, 71 S. W. 2. (8) The fact that this sewer would not drain the whole district is no reason for holding

the taxbills to be invalid.  (9)  The mere fact that most of the property of plaintiffs could not drain into this particular sewer is no reason why the taxbills are invalid.  This objection is not pleaded and even if it had been pleaded would not have availed.  Johnson v. Duer, 115 Mo. 336; Heman v. Schulte, 116 Mo. 409; Prior v. Buehler, 170 Mo. 451.  (10)  The fact that plaintiffs were not required to pay for catch-basins does not invalidate the taxbills.  St. Joseph v. Wilshire, 47 Mo. App. 125; St. Joseph v. Owen, 110 Mo. 455.  (11) It was not necessary at this time to provide catch-basins in the ungraded condition of Harrison street. (12)  The necessity for the construction of this particular sewer was for the council to determine and its action is conclusive.  Miller v. Anheuser, 2 Mo. App. 168; Young v. City, 47 Mo. 493.  The question of the necessity of the sewer for sanitary or other purposes rests wholly with the council, and is not under the supervision or control of the courts."  McCormack v. Patchin, 53 Mo. 35.  (13)  The public interests require that sewer taxbills should be upheld unless some imperative objection exists.

*Peak & Strother* and *Gage, Ladd & Small* for respondents.

(1)  The sewer for which the taxbills in suit were issued is not a district sewer within the meaning of the city charter, because it has not the necessary inlets or appurtenances for house drainage.  K. C. Charter, art. 9, sec. 10; Bayha v. Taylor, 36 Mo. App. 438.  (2) That a storm sewer, or a sewer which does not receive sewage proper, but simply receives surface water, such as the one in question, was never intended to be authorized by the charter of Kansas City as a district sewer, is also obvious.  (3) The charter certainly means that the sewer for which the people in the district are to pay when it is completed, shall be susceptible of

Barton v. Kansas City.

being used for some purpose when it is completed, for the taxbills are to be issued then (see art. 9, sec. 10), and then, if ever, become a lien and charge on the property. (4) Furthermore, the ordinance declared it was necessary to build the sewer for "sanitary and drainage purposes;" but no provision was made for inlets for either purpose, and it can never be used for sanitary purposes, because its outlet is in a parkway and of course could receive no offensive or impure matter. The pretense that it performs a sanitary purpose as well as a drainage purpose is obviously untrue. It can not be a sanitary sewer; has no inlets for that purpose and no outlet for that purpose. (5) While the new charter does not expressly provide how district sewers shall connect, the provisions contained in the old charter contemplating that they shall be part of a sewer system, are unchanged, and we submit that they must still have such an outlet to answer the purpose of all sewer systems, as stated in the Bayha case, namely, "to collect in the sewers the sewage of the city, and to conduct it through the sewers out of the city to some safe receptacle and thus finally dispose of it." Here, the outlet was in a branch in a parkway in the sewer district, where sewage would not be allowed to be deposited.

*H. L. McCune* for respondent, Frank J. McGlinchey.

(1) The powers vested in the city council must be exercised within the bounds of reason and apparent necessity. They must not impose a burden without a benefit, and the unreasonableness of their exercise is a fit subject for judicial inquiry. Corrigan v. Gage, 68 Mo. 541; Skinker v. Heaman, 148 Mo. 356; Albright v. Fisher, 164 Mo. 56. (2) The validity of the taxbills must be determined by the reasonableness of the ordinance as passed, and not by what may be done in the future to make the sewer useful. Bayha v. Taylor, 36

Mo. App. 444. (3) The ordinance provided for a sewer, which the city deemed necessary for sanitary and drainage purposes. This sewer has been constructed for drainage purposes only and is not constructed for the purposes for which it was declared by the common council to be necessary and the taxbills are therefore void.

ELLISON, J.—This is a proceeding by bill in equity whereby plaintiffs seek to have declared void and cancelled, certain taxbills which are apparent liens on their property and are a cloud on their title. The trial court entered a decree for the plaintiffs.

The city council of Kansas City, Missouri, by ordinance, established and ordered constructed, a district sewer in sewer district No. 11, sewer division No. 5. The ordinance duly describes the proposed sewer as beginning at the intersection of Troost avenue and Armour boulevard, at a point on the center line of said avenue and twenty feet north of the south line of said boulevard. Its course is then described on other streets over a total distance (not including one lateral) of near one-half mile, terminating in "an outlet in a creek running north and south between" two streets. For a part of the distance its diameter was to be three feet and two inches, and for the remaining distance it was to be four feet. The sewer was ordered for sanitary and drainage purposes; the words of that portion of the ordinance being:

"Said sewers shall have all necessary manholes, with their necessary connections, and shall be paid for in special taxbills against and upon the lands in said sewer district, as provided by law, which work the common council . . . deems necessary to have done for sanitary and drainage purposes."

Neither the ordinance nor the contract for construction provided for any entrance or ingress into the sewer except the ordinance provides for "manholes"

which were modes of ingress from the top of the sewer in the middle of the street. The words of the ordinance are: "Manholes for the inspection, cleaning and ventilation of said sewers, shall be constructed as parts of, or appurtenances to said sewer at the following points." The ordinance then proceeds to provide that there shall be five manholes on the main sewer and two on the lateral, at designated points.

There was no provision made in the ordinance for connecting the sewer with houses so as to receive the sewage ordinarily originating in buildings and it is conceded that it was not intended for that purpose. Nor was there any provision for connecting the sewer with inlets and catch basins on the curb line of the streets, so that it might receive surface water and thereby perform the function of drainage. The ordinance provided for "necessary connections with manholes," but the contract did not, and none were constructed.

The contractor completed the sewer within the time required. When it was finished and be became entitled to the taxbills (if the proceedings were valid) the sewer had no connection with anything at its beginning and, as stated, its end was in a creek, or ravine. Vital importance is however attached by defendants to the following considerations. It appears that prior to the ordaining of the ordinance for the sewer, the city council had authorized, by ordinance, the board of public park commissioners to construct guttering and curbing along the sides of Armour boulevard of cement and artificial stone, which work, the ordinance provided, should be paid for by the issuance of taxbills against the lands of property-owners. The park board then proceeded to do the curbing and guttering, marking and designating at certain points on such curb, places for the entrance and sinking of catch-basins. It appears further, that after the sewer was completed the park board, of its own motion (that is without an ordinance

of the city council) had catch-basins constructed and connection run from them out into the street and there connected with the sewer. These basins and connections were paid for out of the general park board funds, and, as just stated, without their construction having been ordered by the city council.

Several points have been urged against the validity of the taxbills, under the foregoing facts. It will not be necessary to notice all of them.

The charter of Kansas City (section 10 of article 9) authorizes the construction of district sewers whenever the city council shall deem them "necessary for sanitary or other purposes." The two well known purposes for which sewers are constructed, are sanitation and drainage. While we will not say that it is in all cases true, yet, generally, the only sewer, other than a sanitary sewer, is a sewer for drainage of surface water. So we conclude that this provision by the charter authorizes the construction of a district sewer for sanitation alone, or drainage alone; or, as is most commonly found in Kansas City, a combined sewer for both sanitation and drainage. While a sanitary sewer, or, to use the language of the charter, a sewer for sanitary purposes, will also, in one sense, be a drainage sewer, since it drains off the sewage from inhabited places; yet its function, as was explained in the evidence in this case, and as is the evident meaning of the charter, is one which is adapted to the purpose of carrying off sewage proper, that is, foul matter or such as may become foul, which originates in inhabited places. And so a sewer for drainage purposes, while it will carry off surface water which, if gathered in pools, would become stagnant and unhealthful, may in that respect answer a purpose of sanitation, yet its general purpose is drainage of surface water practically uncontaminated; and so it was shown in evidence. In the present instance, the ordinance directed the construction of a sewer "for sanitary and drainage purposes." That is,

a combined sewer, to answer both purposes. It was for the construction of such a sewer that taxbills were authorized against the property of owners, among whom are these plaintiffs, and for which their property was to be taken and sold without their consent, unless they came forward and discharged the bills by payment.

The sewer here involved, as it has been constructed, is not the sanitary sewer known to the charter and the sewer system of Kansas City, nor is it the combined sewer for sanitary and drainage purposes, known to that system. If anything, it was a drainage sewer only; and, indeed, it is undisputed, that it was not intended for house connection or use. As constructed it was, therefore, not the sewer authorized by the ordinance and there is no base upon which the taxbills can stand, and we adopt the conclusion of the trial court that they are void.

The decree entered must be affirmed for the further reason that the construction called a sewer was, in fact, not a sewer for any purpose. It was, as stated by counsel in argument, "a blind dry tunnel" dug under the surface of the street with no outside connection whatever, whether considered as a sanitary, drainage, or combined sewer. And though the ordinance provided for "all necessary manholes with their necessary connections," there were, as already stated, no catch-basins, nor connections between where such basins should have been and the sewer provided for in the contract; and none were constructed by the contractor. The sewer could not be used for any purpose. But (in the manner above set out) the park board, some time after the sewer was completed and the contractor's work was at an end, did construct catch-basins and connections from them to the sewer, so that surface water on the streets will be taken up and run into the sewer. We can not see how such fact can affect a taxbill, the validity or invalidity of which must nec-

essarily have been fixed and determined by the validity or invalidity of the work for which they were to be the payment. It is conceded by counsel that the completed sewer, being without catch-basins or connections, did not furnish ground for a valid taxbill. Suppose then, that the park board had not built these connections and thus made the sewer of practical use. That board was not obliged to build the connections, nor is that body charged by the charter with power or authority to construct sewers. The charter provides that district sewers are to be provided for and built under the authority of the city council, a power which it has been again and again decided the council can not delegate to any other body. It is to be paid for in special taxbills against private property. These must find their valid foundation in the action of the city council and not that of some other body. How, then, can the mere subsequent action of the park board, which may never have been taken, vitalize an invalid work? Manifestly it can not. In Bayha v. Taylor, 36 Mo. App. 427, 444, the proper body, the city council, undertook by subsequent action to do that which it was thought would have legalized the work, if it had been done prior to the work. But this court held that it would be reversing the order of things and could not be done. Again, in St. Louis v. Clemens, 52 Mo. 134, the Legislature itself, undertook by subsequent action, to vitalize invalid public work, and the Supreme Court held that the act was retrospective and that it could not be done so as to charge property-owners with its cost. So, therefore, we regard the act of the park board as a mere coincidence, and as having no curative effect on the prior illegal work.

It appears that while the acts of the park board referred to were taken after the construction of the sewer, yet such acts were before the taxbills were issued. That, of course, is of no consequence. When the contractor finished the work, and the only work pro-

vided for by the ordinance and contract, he was, or was not, entitled to the taxbills. His right was then made up, not to be added to or subtracted from, by subsequent matters over which he had no control and in which he had no part. As before suggested, suppose the park board had not taken the action it did; would the contractor have lost his labor, not from inherent invalidity in the proceedings leading up to and running through the work, but from an omission of a distinct and independent body? Certainly not. He loses from the invalidity which has attached to the work as it stood completed and disconnected from after considerations entered upon by a distinct body with which he had no connection.

Counsel for defendant have cited the case of St. Joseph ex rel. v. Owen, 110 Mo. 445. We think that the case itself, and the foundation upon which the decision rests have no application to this controversy. Since that authority is so frequently cited in cases arising under the Kansas City charter, we are justified in calling attention to the important fact, that that case arose under the charter of the city of St. Joseph, wherein there is no provision that the material of which the sewer is to be constructed and its character shall be prescribed by ordinance. That charter only requires that the sewer "shall be of such *dimensions* as may be prescribed by ordinance." While the charter of Kansas City provides that the sewer "shall be of such dimensions, *material and character* as shall be prescribed by ordinance." And notwithstanding the St. Joseph charter did not require the material to be provided for in the ordinance, yet we held (before the St. Joseph case was decided by the Supreme Court) St. Joseph v. Wilshire, 47 Mo. App. 125, that the material of which a sewer was to be constructed involved legislative discretion and that its designation and selection could not be delegated.

The judgment is affirmed. All concur.