BAKER, FLEMING & HUBERT v. JAMES A. BROWN.

(Case No. 1037.)

1. IRRIGATION.— The right to use water for purposes of irrigation, when its use is not indispensable, but is resorted to for the purpose of increasing the products of the soil, must be subordinate to the right of a co-proprietor to supply his natural wants and those of his family, tenants and stock, by using the water for necessary and domestic purposes.

2. LIMITATIONS — RIPARIAN RIGHTS.— The rights of a riparian propri-
etor to the use of the water may be restricted or lost by grant,
or by prescription, under such adverse, continuous, uninterrupted
user and occupation by another, as would, by analogy to the stat-
ute of limitations, bar the right of entry upon lands.  Ten years'
user and occupation would in Texas be the period of prescription.

APPEAL from San Saba.   Tried below before the Hon.
W. A. Blackburn.

Appellants, who were riparian proprietors from the
source of Simpson's creek down to a point above the land
of appellee, were accustomed to use the waters of that
stream for irrigation.   Before irrigation began, the water
ran in the channel by the land of Brown.   The testimony
was conflicting as to the condition of the water of the
stream on appellee's land after irrigation was resorted to
by appellants.   Some of the witnesses testified that in-
stead of being a running stream, as formerly, the water
stood in holes after irrigation was resorted to by appel-
lants, thereby rendering it offensive and unfit for use.

*John C. Townes*, for appellants.

*Breedlove & Ewing*, for appellee.

BONNER, ASSOCIATE JUSTICE.— The gravamen of plaint-
iff's action was, that the defendants, who were riparian
proprietors above him on Simpson's creek, had, by irri-
gating their lands from the creek, stopped the flow of
water and caused it to stand in holes along and by his
lands, and had deprived him of its use to supply the nat-
ural wants of his tenants and stock, and had caused nox-
ious and disagreeable smells and malarial diseases along
his lands and in the neighborhood.

An injunction having been prayed for, the judge issued
his fiat granting the same as follows:

" Let a writ of injunction issue restraining and inhib-
iting the said defendants using any water for the purpose

of irrigation, whereby plaintiff will be deprived of a sufficient quantity of water for his natural wants and for his stock on the farm and pasture," etc.

On the final hearing, a jury was waived and the cause submitted to the court, and judgment rendered for the plaintiff for nominal damages, and in legal effect that he have the right to a free flow of the water in the channel of the creek in some quantity; that the defendants were entitled to a sufficiency of the water to supply the natural wants of themselves, their tenants and stock; and that they be perpetually enjoined from further use of said water for any other purpose, to an extent that would cause the same to cease to flow along plaintiff's land.

It will be observed that, under the decree, the defendants had the right to irrigate to an extent which would not impair the free flow of water along the land of plaintiff.

The controlling questions in this case are. *First*, Did the defendants have originally the right of irrigation, to the detriment of plaintiff's right to a proper supply of the water for natural wants and domestic purposes? *Second*, If not, did they acquire this right by grant or prescription?

To the general rule founded on the equality of right in the waters of a stream, that one proprietor should not so use the same as to essentially or materially diminish the quantity to the detriment of another, an exception is allowed in those cases in which it is used for natural wants and domestic purposes, in contradistinction to artificial or mechanical purposes. Rhodes *v.* Whitehead, 27 Tex., 304; Evans *v.* Merriweather, 3 Scammon, 492.

Although it may be difficult to always draw with precision the line which may divide these two classes, yet it is abundantly supported by authority, that the right to irrigate, when not indispensable, but used simply to increase the products of the soil, would be subordinate to the right of a co-proprietor to supply his natural wants

and that of his family, tenants and stock; as to quench thirst, and to the right to use the water for necessary domestic purposes. .

Hence, whether the use of the water for the purposes of irrigation is reasonable and lawful as against another proprietor, would depend upon the facts of the particular case. If the stream should be sufficiently large to admit of necessary irrigation without unreasonably impairing the rights of other proprietors, then it would be reasonable and lawful; otherwise it would not. Fleming v. Davis, 37 Tex., 173, which was a case involving the right to irrigate from the waters of this very stream; Washburn on Easements and Servitudes (3d ed.), ch. 3, § 2, subdiv. 12, citing in note, 3 Kent, 440; Emprey v. Owen, 6 Exch., 353; Wood v. Wand, 3 Exch., 748; Sampson v. Hoddinott, 1 C. B. (N. S.), 590; Webb v. Portland Mg. Co., 3 Sum., 189, 199; Platt v. Root, 15 Johns., 218; Wadsworth v. Tillotson, 15 Conn., 366, 375; Twiss v. Baldwin, 9 Conn., 291, 308; Miller v. Miller, 9 Penn. St., 74; Hetrick v. Deachler, 6 Penn. St., 32; Pugh v. Wheeler, 5 Dev. & B., 50–55–59; Union Mills v. Ferris, 2 Sawyer (C. C. R.).

To the above, beside many other authorities bearing upon this question, may be added, Rhodes v. Whitehead, 27 Tex.; 304; Perkins v. Dow, 1 Root, 535; Weston v. Alden, 8 Mass., 136; Blanchard v. Baker, 8 Me., 253–6; Arnold v. Foot, 12 Wend., 330; Crooker v. Bragg, 10 Wend., 264; Elliot v. Fitchburg R. R. Co., 10 Cush., 191; Gillett v. Gillett, 30 Conn., 180; Tyler v. Wilkinson, 4 Mason (C. C. R.), 400.

Applying the facts of this case to the above rule, it would follow that the defendants had no lawful right to use the waters of Simpson creek for the purposes of irrigation, to an extent materially to impair the right of the plaintiff to the reasonable use of the same, for the purposes of supplying his natural wants and domestic neces-

sities as before indicated, unless they have claimed this right in some mode known to the law.

The general rights of one riparian proprietor to the use of the water of a stream may be restricted or lost by grant, or by prescription under such adverse, continuous, uninterrupted user and occupation by another, as would, by analogy to the statute of limitations, bar the right of entry upon lands. Rhodes *v.* Whitehead, 27 Tex., 304; Tyler *v.* Wilkinson, 4 Mason (C. C. R.), 400; Angell on Water-Courses (4th ed.), ch. 6; Washburn on Easements and Servitudes (3d ed.), ch. 1, §§ 3 and 4.

It does not become necessary to decide how far the acceptance of the deed from J. W. Fleming to John H. Brown, the immediate vendor of plaintiff James M. Brown, may be considered as an indirect grant of the privileges of irrigation.

This deed contained a reservation in favor of said J. W. Fleming, his heirs and assigns, of all such irrigation privileges from the waters of Simpson creek which he had theretofore possessed. Although the privileges thus reserved are now claimed by the defendant John B. Fleming through J. W. Fleming, yet this deed was a link in the chain of title to only a part of the land on the creek owned by plaintiff Brown, and would not be a relinquishment of any rights belonging to him derived through another source.

As no other express grant is relied upon, if the defendants had the right to divert the water for irrigation to an extent which would deprive the plaintiff of his right to have a proper supply for his natural wants and domestic purposes, it must have been by reason of such adverse user and enjoyment for such length of time as would amount to a right by prescription.

This time of prescription with us would be ten years, by analogy to our longest period of limitation. Haas *v.* Choussard, 17 Tex., 588.

Admitting the adverse possession to have commenced on the 1st day of January, 1859, then to the institution of this suit — March 25, 1879 — would be twenty years, two months and twenty-four days. Deduct from this the time from January 28, 1861, to March 30, 1870 — a period of nine years, two months and two days, — during which, under sec. 43, art. 12, Const. of 1869, the statute did not run, would have been eleven years and twenty-two days during which it might have run. The statute, however, was interrupted by an adverse suit in regard to the same subject matter, by Elizabeth C. Davis against J. W. Fleming, the vendor of defendant John B. Fleming, and to which it seems that several, if not all the parties to the present suit, including J. H. Brown, the vendor of plaintiff, were, by intervention and otherwise, either parties or privies.

The record is quite meager as to the details of that suit, but it was instituted prior to the Austin term, 1872-3, of this court, as the appeal was decided at that term. 37 Tex., 173.

So far, then, as is shown by the record, the defendants could not avail themselves of the plea of prescription; and further, it does not appear that the court was not warranted from the evidence in adjudging against them on the other issues presented.

There being no apparent error in the judgment below, the same is affirmed.

JUDGMENT AFFIRMED.

[Opinion delivered October 28, 1881.]