THE ST. LOUIS MERCHANTS' BRIDGE TERMINAL RY. ASS'N

*v.*

JOHANN SCHULTZ.

*Opinion filed February 21, 1907—Rehearing denied April 18, 1907.*

1. PLEADING—*when plea of Statute of Limitations is no defense.* A plea of the Statute of Limitations to an amended count presents no defense if the original declaration, filed in time, states, although defectively, a good cause of action which is substantially the same as that set out in the amended count.

2. SAME—*when a declaration sufficiently charges that a certain slough was a natural water-course.* A declaration in an action for damages for flooding plaintiff's land, which alleges that the defendant constructed an embankment across a certain slough that often filled with water, which said slough would, if left unobstructed, carry the water away without material damages to the plaintiff, by which embankment the water which would naturally pass was obstructed and overflowed the plaintiff's land, fairly charges that such slough was a natural water-course, within the meaning of the law relating to drainage.

3. DRAINAGE—*what is a water-course within meaning of drainage laws.* A slough or depression which carries water in rainy seasons only is not a water-course within the restricted sense in which the term is used as respects riparian rights, but is a water-course within the meaning of that term as used in this State with respect to the laws of drainage.

4. DAMAGES—*measure of damages for destruction of growing crops.* The measure of damages for growing crops which were totally destroyed by inundation is the value of the crops at the time they were destroyed, together with the value of the right of the owner to mature the crops and harvest them at the proper time.

5. INSTRUCTIONS—*when verdict should not be set aside as in disregard of an instruction.* A verdict awarding damages from the

flooding of lands by reason of the construction of a dyke across a certain slough should not be set aside as in disregard of an instruction to the effect that there could be no recovery if the jury believed, from the evidence, that the mouth of the slough was closed at the time of the alleged injury, where there is testimony tending to show that the mouth of the slough was not so closed.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. W. J. N. Moyers, Judge, presiding.

B. H. Canby, and Alex. W. Hope, for appellant.

J. M. Bandy, and D. J. Sullivan, for appellee.

Mr. Chief Justice Scott delivered the opinion of the court:

In the city court of East St. Louis appellee recovered a judgment against appellant for the sum of $999 for damages occasioned by the flooding of farm land, resulting, as he contends, from a grade constructed by appellant which wrongfully interfered with the natural course of drainage. That judgment has been affirmed by the Appellate Court for the Fourth District, and, a certificate of importance having been allowed, the cause comes to this court by appeal.

A tract of land known as Carr Island lies along the Mississippi river, in St. Clair county. The so-called island is separated from the mainland by a depression or slough, known as Carr slough, which at a time of high water, in a state of nature, becomes an arm of the Mississippi river, water from the river flowing into it at the north end and emptying out of it at the south end into the river. It also carries away surface water falling east of it and surface water falling on the eastern portion of Carr Island. The amount of surface water which it so carries, however, has been very much lessened by the construction of a railroad

grade running in a northerly and southerly direction east of it, which prevents the surface water falling east of that grade from running into Carr slough. The natural drainage into the slough from the west is also interfered with by a levee constructed along the east side of Carr Island, to which reference will be hereafter made.

Appellant owns a bridge across the Mississippi river at St. Louis, the eastern end of which is located on Carr Island and the eastern approach to which, also owned by appellant, passes over Carr slough. That approach was originally a trestle work, but in the winter of 1896-97 appellant placed a solid earthen embankment under its track across Carr slough and across Carr Island to the bridge. Where this embankment crosses the slough it is about two hundred feet wide at the base and about twenty-five feet wide at the top. No opening for drainage was left, and the embankment entirely closed Carr slough so that no water could pass.

North of the bridge Carr Island was used for agricultural purposes. The bank of the river on the west of the island is higher and more abrupt than the bank of the slough on the east of the island, and the owners of land on the island north of the bridge had constructed a levee along the eastern side of the island just west of Carr slough, and elsewhere on the island north of the bridge, of a height sufficient to keep the water in Carr slough off of their lands until the water was so high that it would flow over the bank of the river on the west. South of appellant's bridge the island was lower, and at various times there had been three obstructions across Carr slough south of the bridge. One was a railroad embankment; another was a public highway known as the "National way," and a third was a fill near an elevator. Since 1892, however, there had been openings, from sixty to eighty feet long, in the old railroad embankment and in the National way where they cross the slough, and the evidence of appellee tends to show that at the time of the high water which resulted in the damage for which suit was

brought, there was a large opening, three or four feet square, leading through the fill near the elevator, which had been there ever since the fill was put in, while appellant's contention is that the opening had been closed up by its walls and the earth breaking in. Whether or not appellant is correct in this seems to be a matter of indifference for this reason: Carr Island north of these obstructions and south of appellant's bridge is so much lower than the top of the levees and the river bank above the bridge, that when the river rises it covers Carr Island north of the obstructions and south of the bridge long before the water in Carr slough could reach the top of the levees if its flow was not obstructed by the approach to the bridge, and under those conditions the slough would empty into the river south of the bridge at a point north of all the obstructions.

In the spring of 1897 appellee was a farmer, engaged in cultivating land north of the bridge on Carr Island. In April of that year the water in the Mississippi river began to rise, and reached such a height that it flowed into the north end of Carr slough and south in that slough until it reached appellant's embankment, and by reason of that embankment, as is shown by witnesses for the appellee, the flow of the water was stopped and the water accumulated until it broke through the levee on the west side of Carr slough about April 16, inundated the land appellee was farming, entirely destroyed his growing crops and damaged the land he had prepared for corn. The water remained on the land until it was too late to put in other crops that year.

The ruling of the court in denying appellant's motion, made at the close of all the evidence, for a peremptory instruction is questioned.

The original declaration consisted of but one count, and was filed on October 7, 1898. The cause was continued from term to term, awaiting a final decision in another case growing out of the same circumstances. On October 22, 1904, appellee filed an additional count. Appellant demurred to

both counts and the demurrer was overruled. It then filed the general issue as to both counts and interposed a plea of the Statute of Limitations as to the additional count. Appellee filed a replication traversing the averments of the special plea. Appellant contends that the original count stated no cause of action, and that the additional count not having been filed until more than five years after the damages were sustained, was barred by the Statute of Limitations.

The only material difference between the two counts is found in the fact that the additional count avers that Carr slough is a natural water-course, through which surface and other water flows south, and appellant's contention is, that by the averments of the original count it appeared that Carr slough was a swale or depression,—a mere sink,—and not a channel through which abutting land owners had the right to have the water flow without obstruction. The original count is not skillfully drawn, but it avers that Carr slough "often filled with water, which said slough would, if left unobstructed, carry the water passing through said slough without material damage to the occupants" of Carr Island, and that appellant, well knowing, etc., constructed a dike across Carr slough a short distance south of the land occupied by appellee, whereby the water which would naturally pass through said Carr slough and into the Mississippi river "was caused to be obstructed, and from that reason did overflow the lands of the plaintiff."

We think the averments of this original count could not be proven without establishing the fact that Carr slough was a natural water-course, within the meaning of that term as it is used by the courts of this State in discussing the right of the owner of the dominant estate to an easement for the flow of water over the servient heritage. It was a defective statement of a good cause of action, which was the same cause of action stated by the additional count. Under these circumstances the plea of the Statute of Limitations presented no defense. *Chicago and Alton Railroad Co.* v. *Hen-*

*neberry,* 153 Ill. 354; *Eylenfeldt* v. *Illinois Steel Co.* 165 id. 185; *Salmon* v. *Libby, McNeill & Libby,* 219 id. 421.

It is contended that the proof and the allegations do not correspond, for the reason that there was an obstruction in the slough south of appellant's bridge at the time appellee's lands were flooded which prevented the water passing away in the natural manner, and that the declaration charged that the interference was with the natural flow, while the evidence showed that, irrespective of the obstruction placed in the slough by appellant, the water would not have flowed to the river as it did in a state of nature. This objection is obviated in two ways: First, by the facts already pointed out that before the water would get high enough north of the bridge to pass over the levees it would flow into the river north of the three obstructions south of the bridge, as the river, before the water would pass over the levees, would be high enough to flood the island to a point north of the three obstructions in question; and second, by the fact that there is evidence in the record tending to show that at the time of the damage, and long prior thereto, there was a passageway through each of the three obstructions which permitted at least a part of the water to follow the natural way.

It is then said that the original count states no cause of action and that the evidence does not tend to show that Carr slough is a water-course. We have already disposed of this proposition so far as the original count of the declaration is concerned.

The term "water-course" has not always been given the same meaning by the courts. In its more restricted sense it is such a water-way as gives rise to riparian rights in the flow of the water. In that sense of the term a depression or natural drain which merely carries water in rainy seasons is not a water-course. (2 Farnham on Waters, sec. 455.)

In *Lambert* v. *Alcorn,* 144 Ill. 313, it was said: "If the surface water, in fact, uniformly or habitually flows off over a given course, having reasonable limits as to width, the line

of its flow is, within the meaning of the law applicable to the discharge of surface water, a water-course." To the same effect is *Ribordy* v. *Murray,* 177 Ill. 134.

If it be conceded that there is no evidence in this record to show that Carr slough is a natural water-course in the narrower significance of the term, still the evidence establishes the fact that it is, within the meaning of the law of this State in reference to drainage, a water-course.

Various questions of fact are brought to our attention by appellant, but as the judgment of the Appellate Court is conclusive in reference thereto we will not state or discuss them here.

The motion for a directed verdict was properly denied.

It is also urged that appellee's witnesses estimated the damages on an improper basis. We find from their testimony that in the first instance they stated the fair cash value of the growing crops at the time of their destruction. These crops consisted of wheat, oats and potatoes. When the ground was inundated the wheat was about knee-high. The potatoes, after coming up, had been, in accordance with the method of cultivation followed in that vicinity, covered up and had again appeared above the ground and were two or three inches high; and the oats had attained about the same height. It is claimed that on cross-examination it appeared that the witnesses had adopted an improper basis in fixing that value, and for this reason appellant moved to strike out certain of the evidence.

For immediate use the immature crops, of course, had no value at all. Cross-examination demonstrated that the value which the witnesses were fixing was the value of the crops as they were when destroyed, together with the value of the right which the owner had to mature the crops and harvest or gather them at the proper time. Such method of establishing the market value of growing crops which had been totally destroyed was determined to be a proper one in *Economy Light and Power Co.* v. *Cutting,* 49 Ill. App. 422,

and the reasoning on this subject in the opinion in that case meets with our approval.

The court did not err in overruling the motion to strike the evidence.

Complaint is made of the action of the court in passing on instructions. Several of the questions thus presented have been disposed of by what has already been said. The other propositions advanced in this regard seem trifling in character. For example, the twelfth instruction asked by appellant read as follows:

"If the jury believe, from the evidence in this case, that Kerr's slough was *solidly* closed up at its mouth at the time of the alleged injury in 1897 and no water passed through, then Kerr's slough was not a natural water-course, as alleged in plaintiff's declaration, and the jury will find the defendant not guilty."

The court modified this instruction by striking out the word "solidly," which we have above italicized, and gave it as modified, and this modification is said to have been error. If the meaning of that instruction was changed at all by the modification, the change was one which was favorable to appellant.

We have considered the instructions given as a series and have examined those requested by appellant which were refused, and are satisfied that the court, in passing on the instructions, committed no error of which appellant can take advantage.

It is then said that when the court gave instruction No. 12 as modified, which is above set out, that instruction became the law of the case, and that a new trial should have been granted because the jury did not follow that instruction. It is at once apparent that this instruction does not state the law and that it gave appellant an undue advantage, but it does not appear that the jury disregarded it. There was testimony in the record which tended to show that the slough was not closed up at its mouth at the time in question,

and the jury evidently adopted the view warranted by that evidence.

We think this judgment does substantial justice, and that the record discloses no reversible error.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*