## HUMPHREYS–MEXIA OIL CO. v. ARSE-NAUX et al.   (No. 8821.)*

(Court of Civil Appeals of Texas. Dallas. June 24, 1922. Rehearing Denied Oct. 14, 1922.)

**1. Waters and water courses ⊚⟿38 — River, though practically dry in summer, held a "natural water course" giving rise to riparian rights.**

A river fed by streams and springs, some of which never fail, flowing steadily in a well-defined channel except in very dry summers, when it gets so low that it stands in holes, though is never entirely dry, is such a natural water course as gives rise to riparian rights to the attingent landowners.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Natural Water Course.]

**2. Waters and water courses ⊚⟿39—Riparian rights may be based on lease.**

Riparian rights exist independent of ownership of riparian lands, and a lease conveying all surface rights is a valid conveyance of such riparian interests in adjoining water, notwithstanding the title to the land does not pass by the lease.

**3. Waters and water courses ⊚⟿53—Statute permitting damming of a water course cannot affect riparian rights.**

A permit to dam a natural water course granted under Acts 35th Leg. (1917) c. 88 (Vernon's Ann. Civ. St. Supp. 1918, arts. 4991–5011½w), which takes no cognizance of strictly riparian rights as such, cannot be construed as conferring upon the grantee any right to use the water of such course to the exclusion or impairment of the inseparable rights of riparian owners or lessees.

**4. Constitutional law ⊚⟿277(I)—Waters and water courses ⊚⟿40—Riparian rights limited only by reasonable use as concerns other riparian owners.**

Riparian rights are valuable and vested rights of which the owner may not be deprived except by due process of law, and as a general rule these rights are measured and limited only by the reasonable use of the water as considered in relation to the needs and rights of other riparian owners.

**5. Waters and water courses ⊚⟿47—Riparian owner may divert and sell water to nonriparian users.**

One possessing riparian rights may divert or sell water from a river to nonriparian owners so long as such diversion and sale is reasonable and not injurious to other riparian owners.

**6. Constitutional law ⊚⟿79—Board of water engineers cannot grant permits divesting riparian owners of their rights.**

The board of water engineers as a branch of the executive department of the state cannot under Const. art. 2, § 1, and article 5, § 1, exercise functions judicial in their nature and by decree affect the property rights of citizens, and the recitation, in a permit to build a dam, of a grant of the public waters of the state, cannot be construed as the grant of any interest that could be asserted against riparian rights which cannot be divested by any governmental department without due process of law, Const. U. S. Amend. 5; Const. Tex. art. 1, § 19.

### On Motion for Rehearing.

**7. Waters and water courses ⊚⟿47—Rights of inferior riparian owners do not accrue to appropriators of public waters.**

Riparian owners cannot divert water to land lying beyond the watershed or make merchandise of, it to the detriment of inferior riparian owners who are entitled to the full flow except what has been used for purely riparian purposes, but this right accruing to inferior riparian owners does not belong to appropriators of the public waters possessing no riparian interests.

Appeal from District Court, Limestone County; A. M. Blackman, Judge.

Action by the Humphreys-Mexia Oil Company against J. Arsenaux and others. From a judgment for the defendants, plaintiff appeals. Affirmed.

C. S. Bradley, of Groesbeck, and Vinson, Elkins, Wood & Pollard, of Houston, for appellant.

W. S. Parker and E. B. Robertson, both of Mexia, for appellees.

HAMILTON, J. On October 15, 1921, appellant, in compliance with the provisions of chapter 88 of the General Laws of Texas enacted by the Thirty-Fifth Legislature (Vernon's Ann. Civ. St. Supp. 1918, arts. 4991–5011½w) obtained a permit from the board of water engineers to construct a dam across the Navasota river in Limestone county, Tex., for the purpose of appropriating what is denominated in the permit as public waters of the state of Texas. The permit authorized the use of the storm waters and the flood waters of the river. Appellant constructed a dam in compliance with the provisions of the permit as to materials and dimensions. A reservoir was thus formed which was filled with water extending some distance up the river. Appellant owns no land along which or through which the river extends. It is a corporation engaged, among other things, in producing oil in what is known as the "Mexia Oil Fields." Its object in constructing the dam was to create a supply of water to be used in the drilling of wells in this territory, no portion of which, so far as the record discloses, is contiguous to the river.

On the 6th day of March, 1922, appellee obtained a lease of a strip of land 50 feet wide on each side of the river extending up

and down and being contiguous to the river adjacent to the water held by the dam. This lease conveyed the surface rights to the land, the mineral rights having been previously conveyed to another lessee. The evidence discloses that appellee's sole purpose in acquiring the lease of the land on the two opposite sides of the river and adjoining it was to erect thereon pumping stations, power houses, and other equipment to be used in the business of supplying water to those engaged in drilling oil wells and in other like pursuits in the Mexia Oil Fields.

Appellee having completed the construction of its equipment, or a portion thereof, and having undertaken to lay pipe lines into the oil field, appellant applied to the district court for an injunction to restrain appellee from pumping, diverting, and conveying water from the reservoir created by appellant in the river in the manner above stated, and also seeking to enjoin appellee from selling or otherwise disposing of water or in any way interfering with appellant's exclusive use of water in the reservoir. After the court had heard the evidence, an order was entered refusing to grant the temporary writ of injunction prayed for by appellant, and from this order the appeal is prosecuted.

Appellant's appeal is rested upon the following propositions:

First. That the defense is based upon a claim of riparian rights, and that the Navasota river under the proof is not such a water course that such rights in relation to it may exist; for which reason it is contended the flood waters which it carries are within the control of the Legislature, and that such waters having been lawfully appropriated by appellant in compliance with statutory provisions, appellee should be enjoined from diverting any of them from the reservoir.

Second. The proposition is advanced that riparian rights cannot exist independent of the ownership of riparian land, and that the lease to appellee merely undertook to convey riparian rights without the transfer of the title of the riparian land, for which reason appellee is without the basis of any claim to such use of the Navasota river water as to authorize the diversion of it.

Third. It is contended that the land upon which the water appellee is attempting to divert from the river is to be used is nonriparian land, and for this reason appellee should be enjoined from making such use of it because this character of use would be in violation of appellant's rights as a prior statutory appropriator.

Fourth. Appellant asserts that, under the record, neither party to the suit owns the title to any riparian land contiguous to the Navasota river, and that both parties are seeking to use the storm and flood waters on nonriparian land and for nonriparian pur-poses; that, accordingly, no rights of riparian ownership are involved, and that since appellant is first in time of regular statutory appropriation, and appellee asserts no right whatever as a statutory appropriator, the injunction should issue.

Fifth. The last proposition is that the provisions of chapter 88, Acts of the Thirty-fifth Legislature, relating to the issuance of permits of the kind upon which appellant asserts its rights as a statutory appropriator against appellee, are altogether valid and constitutional, and that the decisions of courts heretofore rendered declaring invalid certain sections of the law have no relation to the issues here involved.

As we view the case, the principal questions presented for consideration are these: Is the Navasota river, under the evidence in the case, a natural water course of the character that riparian rights in its waters exist in relation to the contiguous land? Is the lease conveying a strip of land on each side of the river to appellee an instrument which discloses a conveyance carrying with it riparian rights? Do the provisions of chapter 88, Acts of the Thirty-Fifth Legislature, validly sustain the asserted rights of appellant as a statutory appropriator of water from the Navasota river as against appellee, conceding the latter to possess the rights of a riparian owner?

[1] The proof shows that the river is fed at its source by springs and tributary streams; that along its course springs exist, at least some of which never entirely fail; that a well-defined channel, cut by the force of the flowing water, exists; that the banks are clearly marked; and that the river wanders to another stream into which its waters are discharged; that its course is permanently and clearly marked everywhere by a bed naturally made by the waters; that during certain seasons of the year the river regularly flows without intermittence; that in extremely dry summers it stands in holes, but is never absolutely dry. Such a stream is a natural water course in which the water moves from its source to its mouth, and riparian rights to its waters inhere in the ownership of attingent lands. 40 Cyc. 553 et seq.; 27 R. C. L. 1062. In this connection the designation of the stream as a river is of forceful significance. The generic term "river" classifies and stamps the stream as a natural one having its own current of water which flows down from its source into the ocean or some other body or stream of water.

[2] By the terms of the written lease under which appellee asserts its title to lands adjacent to that portion of the river which contains the waters of the reservoir constructed by appellant, all the surface rights in the land as distinguished from the mineral rights therein are conveyed to appellee. The

lease expressly states that the grantor intends by it to convey only the surface rights in the land, "the minerals having been heretofore leased to other parties." This expression in the lease merely recognizes the title in the mineral estate to be in a prior grantee to whom it was passed before the transaction the lease reflects. Of course, the surface rights in land may be conveyed by lease or otherwise with reservation of the mineral estate in the grantor On the other hand, the mineral estate may be separated from the remainder of the estate and disposed of by a distinct conveyance. The lease under which appellee asserts its rights to the land lying alongside the river limitedly conveys all the estate except the mineral estate and is a valid conveyance of such estate as would carry with it the riparian rights of the owner. Furthermore, while the appellant contends before this court that appellee has no title upon which to support claim of riparian rights and interest in the waters of the river, yet the statement of facts contains the following agreement of the parties which is in contravention of the position appellant takes on this point:

"It is further agreed that the defendant oil well water company have acquired by mesne conveyances the riparian rights of the owners of the Joe Echols 49.8-acre tract in the P. Varella XI league grant lying on the west side of the Navasota river, and of the George Echols 52-acre tract on the east side of said river, and of the Nick Echols 25-acre tract also on the east side of said river, all in said P. Varella grant as shown by the maps introduced in evidence."

A lease of land is a conveyance of it, and if the land be riparian the lease is such conveyance as passes the riparian rights incidental to its ownership, especially in the absence of some provision reflecting the conveyance to be for a purpose or use to which riparian rights could have no appurtenance. The conveyance to appellee of the land contiguous to the river being by its express terms a lease of all the owner's interest in it except the mineral estate, and the record disclosing as it does an express agreement between the parties that appellee has the riparian rights of the owners of the land, we must resolve the second question above stated against appellant and hold that the riparian rights are in appellee.

Having determined that the Navasota river is a natural water course in the waters of which riparian rights exist, and that appellee possesses the riparian rights of the owners of the land leased to it, we are brought to a consideration of the third and last above-stated inquiry as to whether or not the provisions of chapter 88, Acts of the Thirty-Fifth Legislature, upon which appellant relies to sustain the validity of the permit granted it by the board of water engineers,

are potent to give an effect to the permit granted which would sustain appellant's claim as an appropriator of water under which it can exclude appellee from the right to use any of the impounded water, notwithstanding it possesses riparian rights with which an absolute owner would be clothed.

[3] The permit granted appellant in conformity with statutory provisions, and under which it asserts its exclusive right to the impounded water, makes no reference to the ordinary flow of the river. It grants merely the right to use the storm water and flood water of the river, not to exceed 100 acres feet of water per annum. The permit is granted subject to the rights of prior appropriators below the dam to be constructed by appellant under its provisions, and it provides that appellant at no time shall be permitted to impound any part of the normal flow of the stream or any part of the storm or flood water when the same may be required or demanded for the use of any prior appropriator below the location of the dam. It takes no express cognizance of any strictly riparian rights as such.

Appellee, as a riparian owner, has a right, inseparably connected with the land under lease by it, to the water in that portion of the stream lying alongside the tracts of land under lease, and, pretermitting a discussion of the validity of the statute upon which appellant's assertion of right depends, we do not think the enactment can be said to confer upon appellant, as a statutory appropriator, any right to the use of the water in the river to the exclusion or impairment of appellee's riparian right to its use.

[4] It is elementary that riparian rights are valuable and vested rights, of which the owner may not be deprived without due process of law and without compensation therefor being made, if the possessor of such rights stands by them and asserts them. As a general rule, it may be said that a riparian owner's rights are measured and limited only by his reasonable use of the water considered in relation to the needs and rights, not of mere appropriators who have failed to follow due process of law or make compensation, but only of other riparian owners along the stream. Watkins Land Co. v. Clements, 98 Tex. 578, 86 S. W. 733, 70 L. R. A. 964, 107 Am. St. Rep. 653; Baker v. Brown, 55 Tex. 377; 27 R. C. L. 1128.

[5] If the evidence in this case were such as to establish the proposition that the only water impounded by appellant and the use of which it sought to exclude appellee from were surface and flood waters of such fugitive nature that they were not confined in and flowing along the river's channel, it might be that appellee could be excluded from their use. However, since the evidence contained in the record is such as to sup-

port the conclusion that the dam constructed by appellant impounds storm water and overflow water which passes along the channel of the river, as well as the ordinary flow of the water in the river, we think appellee's riparian rights must be held to be unimpaired by the permit issued under the statute. One of those rights is the right to divert water from the river and sell it to nonriparian users, so long as such diversion and sale of water is reasonable as considered with regard to the rights of other riparian owners and does not impinge upon or impair any of their riparian rights.

[6] The permit undertakes only to confer rights upon appellant as against subsequent appropriators of water. As already stated, it takes no cognizance whatever of riparian rights as such. The permit grants to appellant what it declares to be public waters of Texas. But this declaration by the board of engineers does not operate to clothe appellant with any interest which can be asserted against riparian rights. It is no more than the ipse dixit of the board, which belongs to the executive department of the government. That department of government cannot by decree affect the property rights of citizens. It cannot exercise functions judicial in their nature. Section 1 of article 2, Constitution of Texas; Section 1 of article 5, Constitution of Texas. Since appellee possesses the riparian rights of the owner from whom it holds its lease, all such rights continue in it until it is divested of them by due process of law. No department of government can otherwise effect such divestiture. Fifth Amendment U. S. Constitution; section 19 of article 1, Constitution of Texas.

The following authorities sustain our view that the permit granted appellant under the statute does not clothe it with any power or right to use impounded water in the river to the exclusion of appellee: Board of Engineers v. McKnight, 229 S. W. 301; Boyd v. Motl (Tex. Civ. App.) 236 S. W. 487.

The judgment is affirmed.

### On Motion for Rehearing.

[7] The authorities cited in the motion for a rehearing sustain the general doctrine contended for only as between riparian owners, which substantially is that a riparian owner cannot divert water to land lying beyond the watershed and has no right to divert water from the stream to make merchandise out of it. But the authorities cited do not hold that one without riparian rights may complain. They all proceed upon the assumption of the right of other riparian owners to have the use of the full flow of the stream except whatever part of it may be applied by a superior riparian owner to uses which are strictly riparian.

A riparian owner, of course, cannot divert water from a riparian stream for nonriparian purposes in derogation of other riparian owners' rights. This well-established proposition is recognized in our original opinion. But appellant having acquired no riparian rights or other lawful rights to the water confined in the natural channel of the stream is not in a position to call for relief, as a riparian owner of land would be. The grant from the board of water engineers did not confer any legal right whatever upon appellant to exclude appellee from making any use of the normal flow of water in the river.

Appellant copiously quotes from the case of Gould v. Eaton, 117 Cal. 539, 49 Pac. 577, 38 L. R. A. 181, to sustain the argument that appellee, even if it should be regarded as a riparian owner, has no right as against appellant, an appropriator of flood water, to divert any water from the stream and apply it to nonriparian uses. This case, as well as the other authorities cited, deals with the question solely in relation to rights as between riparian owners. The substantial effect of the holding in that case upon the point pressed here is that a riparian owner cannot, as against an inferior riparian proprietor, confer upon another the right to divert riparian water to lands which are not riparian to the stream. The case expressly holds that as against himself or his grantee, he may contract for the diversion of the water to nonriparian lands, although a contract providing for such diversion of water will not affect the rights of an inferior riparian proprietor.

The motion for rehearing is overruled.