CITY OF INDEPENDENCE TO USE OF ANNIE F. FLOURNOY, EXECUTRIX, ETC., RESPONDENT, v. WILLIAM DICKINSON AND ALICE DICKINSON, APPELLANTS.

Kansas City Court og Appeals. May 5, 1930.

*J. P. Flournoy* for respondent.

*Martin B. Dickinson* for appellant.

BARNETT, C.—This is a suit to enforce the lien of special tax bills issued by the city of Independence, Missouri, in payment of the cost of constructing a joint district sewer. The action was originally brought to the use of W. S. Flournoy, now deceased, and has been revived to the use of his personal representative. The case was tried before the court without a jury, judgment was rendered foreclosing the lien of the tax bills, and the defendants have appealed. The defendants are the owners as tenants by the entirety of lots 18, 19, 20, 21 and 24 in Edgewood Park, an addition to the city of Independence. These lots lie along the east boundary of sewer district No. 80. Immediately west of this district lies sewer district No. 79. The council passed an ordinance creating joint sewer district B which is composed of sewer districts Nos. 79 and 80.

In order to indicate the location of the two districts and the natural drainage of the land we indicate the location of certain streets in the city of Independence. The following streets run approximately north and south and are named in their order going east; Spring Street, Osage Street, Liberty Street, Main Street, Lynn Street, Nolan Street, High Street. The following streets run approximately east and west and are named in their order going south: Jones Street, Kendall Avenue, Elizabeth Street, Nickell Avenue. The north boundary of sewer district No. 79 is between Jones Street and Kendall Avenue. The west boundary is the alley between Main Street and Lynn Street. The south boundary is slightly north of Nickell Avenue from the east boundary to Liberty Street and then it runs along the north line of Nickell Street. The east boundary is the alley between Spring Street and Osage Street.

The north boundary of sewer district No. 80 is an extension of the north boundary of sewer district No. 79 to a point which is apparently the alley east of High Street. The east boundary is apparently the alley east of High Street to a point south of the south boundary of sewer district No. 79, but this district extends several blocks south of the south boundary of district No. 79. The west boundary of district No. 80 is the east boundary of district No. 79 except where district No. 80 extends south of the south boundary of district No. 79. There is a divide in the east part of district No. 79 which is approximately at Main Street. The ground slopes downward from this divide on both sides. There is another divide in district No. 80 which is approximately at High Street from which the ground slopes downward on both sides. There is a natural ravine or depression in district No. 79 beginning approximately at

the southeast corner of the district and which leaves the district a little south of the northwest corner. In district No. 80 there are two natural ravines or depressions. Beginning at Nickell Street the water naturally flows north approximately at Lynn Street in one of these depressions and approximately at Nolan Street in the other depression. These two ravines then come together before passing out of the district and then the water flows north and slightly west and thus crosses the north boundary of the city. All of the water drains from that part of district No. 80 east of the divide at High Street in an easterly direction until it passes out of the district and then flows in a northerly direction.

All of these watercourses finally empty into Mill Creek which is outside of the city and which in turn finally empties in the Missouri River. Defendant's testimony was to the effect that the stream or ravine which drains district No. 80 goes dry in the summer but is fed by springs and is running the balance of the year, and that the stream or ravine in district No. 79 is probably never dry. The city engineer testified for the plaintiff and went very fully into the lay of the land and the natural drainage of the two districts, but did not testify as to whether or not the ravines in the two districts were ever dry or as to what portion of the year they contained running water. He testified as follows:

"Q. Now, with reference to the water shed or drainage area of the portion of 80, if any, that lies in the same drainage area as district No. 79 what would you say, what portion of 80 would lie in the same general district as 79? A. Well, very little."

He also testified that practically all of the joint sewer district would drain to the north except that part of "Edgewood District" would drain toward the east.

The evidence shows that the city has established three public sewers; one in the northwest, one in the east, and one in the south part of the city. The defendant's land lies in the northeast part of the city and the engineer testified that at the time the public sewers were established it was not considered necessary to construct a public sewer in the northeast part of the city because these two districts could be taken care of by making a cut which was not more than had been made in a large number of districts. The joint district sewer which was established in joint sewer district B begins at the intersection of Kendall Avenue and Nolan Street and runs west along Kendall Avenue to one of the main public sewers. It crosses the natural watercourse in district No. 80 at a point between Lynn and Nolan Streets upon a trestle, where the sewer is about four feet above the ground, so that the water from district No. 80 now drains under the sewer in the same manner that it did before the joint district sewer was established.

### OPINION.

Appellant contends that the establishing of joint sewer district B and the joint district sewer therein constituted ultra acts upon the part of the city, because the joint sewer district included a district not contained in its natural drainage area or watercourse. Respondent contends that the facts do not show that the city exceeded its powers, and that the proviso at the end of Section 8306, Revised Statutes 1919, to the effect that the joint sewer district shall not include any district not contained in its natural drainage area or natural watercourse only modifies the provisions in the section that the action of the council creating a joint sewer district shall be conclusive as to the necessity therefor, and does not modify the declarations found in the very beginning of the section wherein the power is granted to establish joint sewer districts. It seems to us that respondent's suggestion as to the construction of the proviso has not been followed to its logical conclusion. If we should concede that the proviso against including any district not contained in the natural drainage area or watercourse of the joint sewer district applied only to the conclusive effect of the action of the council, it is yet necessary to determine the effect of the proviso. That part of the statute which provides that the action of the council should be conclusive is as follows:

"And the action of the council creating the joint sewer district shall be conclusive as to the necessity therefor, and no special tax bills shall be held invalid or be affected on account of the included drainage area thereof, or the size, character, or purpose of such sewer."

If it be true that the proviso does away with the conclusive effect of the action of the council concerning these matters, then the statute must necessarily mean that the question is for the court. Surely there is no necessity for the court to determine the question if the result is to be the same no matter how the question is determined. Therefore, if the question as to whether the council has created a joint sewer district which includes a district not contained in its natural drainage area or watercourse is a matter reserved for the determination of the courts, but in other respects no tax bills may be declared void on account of the included drainage area, then it necessarily follows that the court only determines whether the proviso has been complied with in order to determine whether the tax bills are valid or void. Without pausing to speculate upon the mental process by which we should arrive at an obvious conclusion, we hold that the proviso at the end of section 8306 is a restriction upon the power of the council to establish joint sewer districts. A similiar conclusion was reached in the cases of Bayha v. Taylor, 36 Mo. App. 427, and the City of Kansas v. Swope, 79 Mo. 446.

The question as to whether or not the city has established a joint sewer district that includes a district not contained in its natural drainage area presents difficulties. There is no paucity of authority as to what is meant by "natural watercourse." It has been held that a natural watercourse is a natural stream flowing in a definite bed or channel with banks and sides and having a permanent source of supply. [McHenry v. City of Parkersburg, 66 W. Va. 533, 29 L. R. A. (N. S.), 860, 66 S. W. 750.] To the same effect see Neal v. Ohio River R. Co., 47 W. Va. 316, 34 S. E. 914; Wilson v. Pacific R. Co., 113 N. Y. S. 1101; Hastie v. Jenkins, 101 Pac. 495, 53 Wash. 21.] However, there is much authority to the effect that it is not necessary that a stream contain running water throughout the year in order that it come within the definition of a natural watercourse. Thus it has been held that a depression or slough separating an island from the Mississippi River so in time of high water it became an arm of the river with water flowing into it at the north and emptying at the south end and which formed a drainage for surface water was a natural watercourse. [St. Louis Merchants Bridge Terminal Ry. Assn. v. Shultz, 226 Ill. 409, 80 N. E. 879.] It is not essential to the existence of a natural watercourse that the supply should be living water, but it may be surface water; nor is it necessary that there should be a constant and continual flow. [Brown v. Schneider, 81 Kans. 486, 106 Pac. 41; Palmer v. Waddell, 22 Kans. 352.] To constitute a natural watercourse it is not necessary that there should be a stream with well-defined banks and beds or that the water flow at all seasons of the year; but where the conformation of the land is such as to cause surface water to flow from one tract to another in a fixed determined course, so as to uniformly discharge it upon the servient tract at a fixed and definite point, the course thus uniformly followed by the water in its flow is a natural watercourse. [Town of Boise D'Arc v. Convery, 255 Ill. 511, 99 N. E. 668.] To the same effect see Jaquery Ditch Co. v. Garcia (N. M.), 124 Pac. 891; Humphreys-Mexia Oil Co. v. Arsenaux (Tex.), 244 S. W. 280; Trout v. Woodward, 64 Ind. App. 333, 114 N. E. 467; Gaskill v. Barnett, 52 Ind. App. 654, 101 N. E. 40; Miller v. Hester, 167 Iowa, 180, 149 N. W. 93; Thompson v. Andrew, 39 S. D. 477, 165 N. W. 9.] We think that the evidence shows that there is a natural watercourse which runs in a northwesterly direction in sewer district No. 79, and that there is another natural watercourse which flows in a northerly direction in sewer district No. 80, and that neither watercourse serves to drain the appellant's land which lies east of the natural water shed which is approximately at High Street.

However, the statute only requires that the joint sewer district shall not include any district not contained in its *natural drainage area* or watercourse. We find no authority that enables us to deter-

mine what it meant by "natural drainage area." It is common knowledge that the drainage of land is usually through streams fed by tributaries which grow smaller and which are themselves made up by smaller tributaries so that any main stream with its tributaries, when recorded upon a map, bears some resemblance to a tree. It is certain that the Legislature did not intend such a minute application of the restriction upon the power of the council as to require the formation of a joint sewer district with regard to every minute variation in the elevation of the land. The exception, if so applied, would destroy the grant of power to the council to establish joint sewer districts. On the other hand, if the proviso should be so liberally construed as to permit the formation of joint sewer districts whenever all the land included is finally drained into one main river, then there would be no restriction at all; because there is not a foot of land in the State of Missouri which is not ultimately drained by the Mississippi River. We are aware of no decision that construes that part of the statute which is now under consideration, and therefore the time has not arrived for attempting the statement of any general rule to be followed in applying the statute. No one should trust himself to think of all the peculiar conditions to which the statute must be applied.

It would be a reckless thing to attempt to state a general rule for the construction of this statute until it has been considered by the courts and applied to a great number of situations. However, it is certain that the proviso must be reasonably construed so that the grant of power and the restriction thereon may both stand, for that was the intention of the Legislature. We have already indicated that we do not think that the Legislature in speaking of a natural drainage area had in mind the main drainage divisions of the United States or of the State of Missouri, nor the slight local differences which cause surface waters to flow in opposite directions within a few feet of each other, although all the water in the immediate locality is served by the same natural drain. The Legislature must have considered that the city must observe the natural drainage areas as natural divisions existing within the corporate limits of the city. This we think the city has failed to do. None of the water can naturally drain from district No. 80 over any part of district No. 79. None of the water from that part of district No. 79 lying west of the natural divide which is approximately at Main Street can drain over any part of district No. 80. That small part of district No. 79 which lies east of Main Street belongs to the natural drainage area which is served by the natural drain in district No. 80. The appellant's land does not belong to any natural drainage area which is served by the sewer which was actually established.

The plaintiff in the trial court sought to sustain the validity of the proceeding upon the theory that it was more economical to

build a joint sewer district which intersected the natural drains in the two districts, and that the course pursued by the city was reasonable and necessary; that in no other way could the territory be connected with the main sewer without incurring undue expense. On the other hand, the defendants introduced evidence showing that the city had, at public expense, built three main sewers to serve three parts of the town but had not built a sewer to serve that part of the town wherein defendant's property lies. In this court respondent says:

"A large portion of appellant's argument is directed toward a criticism of the action of the council for not building this sewer as a public sewer at the expense of the whole city, for not putting in an ejector or pumping station instead of using a cut at Main Street, and not doing the job in some other way than it was done. That line of argument is out of place addressed to a court. It was disposed of when the council decided to do the job in the way it did. There is nothing in the law making an ejector station a public sewer. It was a question not of law but of expense."

We quite agree with the respondent that the council is not compelled by law to build a public sewer as suggested by appellant. But if respondent may stand upon the cold rule of law that the court may not interfere if the council has acted within its powers, then it is equally true that he may not justify the action of the council on the ground of economy or practicability when it exceeds its powers.

The judgment should be reversed. The commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by BARNETT, C., is hereby adopted by the court. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.