Howard HAMMACK, d/b/a Howard B. Restaurant, Respondent,

v.

MISSOURI CLEAN WATER COMMISSION, Appellant.

No. 12999.

Missouri Court of Appeals, Southern District, Division One.

Oct. 14, 1983.

---

John M. Belisle, J.D. Baker, Belisle & Baker, Osceola, for respondent.

John D. Ashcroft, Atty. Gen., Sandra K. Stratton, Kirk Lohman, Asst. Attys. Gen., Jefferson City, for appellant.

GREENE, Chief Judge.

This appeal is from a trial court judgment vacating an administrative order of the Missouri Clean Water Commission (Commission). The order in question directed Howard Hammack, d/b/a Howard B. Restaurant of Collins, Missouri, to comply with the terms of an abatement order previously issued to Hammack by the Missouri Department of Natural Resources, directing him to construct an adequate wastewater treatment facility to treat effluent from the Howard B. Restaurant.

Hammack filed a petition for judicial review, contending he was not violating the provisions of the Missouri Clean Water Law. The trial court, after reviewing the record, ruled that the Commission had abused its discretion in affirming the abatement order issued by the Department of Natural Resources, in that there was insufficient evidence to support its findings and conclusions.

Our review, under the facts here, consists of a determination of whether the Commission's order is supported by competent and substantial evidence on the whole record. Rule 84.16(b), V.A.M.R., § 536.140, V.A.M.S., 1978. If it is, the trial court erred in vacating the order. In reviewing an administrative agency decision, the evidence is viewed in its entirety together with all legitimate inferences therefrom, in a light most favorable to the agency. *Abbott v. Civil Service Commission of City of St. Louis,* 546 S.W.2d 36, 37[2] (Mo.App.1976).

The evidence presented to the Commission was that Hammack had operated the restaurant for about 12 years, and had owned it since 1978. Waste from the restaurant, in the form of sewage and kitchen waste, is partially treated by a concrete septic tank and a grease trap. The partially treated effluent from the septic tank is discharged through an overflow pipe into a drainage ditch immediately south of the restaurant running from the east to the west, and then travels a distance of approximately 200 yards through a series of ditches until it enters Coon Creek. The basin of Coon Creek varies from 10 to 20 feet across, and has a cut from 6 to 8 feet deep. Coon Creek, while spring fed, is referred to by local residents as a "dry branch", in that it does not have a constant flow. It does flow four to six months of the year, following rain or melting snow. There was no testimony as to what larger stream the Coon Creek waters emptied into.

Starting in 1978, employees of the Department of Natural Resources advised Hammack that he needed a National Pollutant Discharge Elimination System (NPDES) permit, and that discharge from his water contaminant source was polluting Coon Creek in violation of state law. Effluent samples were taken from Hammack's discharge pipe, and the samples showed biochemical oxygen demand (BOD) and suspended solids far in excess of the effluent limitations prescribed by Commission Regulation 10 CSR 20–7.015(3). Hammack promised to upgrade his waste disposal system but did not do so. The department then issued an abatement order. The order stated that Hammack was violating the provisions of the Missouri Clean Water Law by:

(A) Operating, using and maintaining a water contaminant source which discharges into a ditch tributary to "Coon Creek, waters of the state," without a NPDES Permit;

(B) Discharging a water contaminant from a point source in violation of state law and Commission regulation;

(C) Causing pollution to waters of the state, or causing or permitting a water contaminant to be placed in a location where it is reasonably certain to pollute state waters in violation of state law;

(D) Failing to comply with effluent limitations promulgated by the state.

The order set up a compliance schedule in which Hammack was required within 180 days of the date of the order to submit an application for a NPDES permit, and to build a waste treatment plant whose effluent discharge would be within the limitations provided by law. The order provided that if Hammack failed to follow the compliance schedule that the discharge from the restaurant septic tank would be terminated.

Hammack's evidence was to the effect that Coon Creek was a dry branch, that the cost of a waste treatment plant that would satisfy the Commission would be fourteen to twenty thousand dollars, and was not economically feasible, that Collins is a "septic tank town", and that other residents of Collins discharged contaminants into the same ditch as did Hammack, making it a community problem rather than a problem solely caused by him. Hammack testified that by reason of the cost, he would have to close the restaurant if forced to comply with the terms of the abatement order.

In its findings of fact and conclusions of law, the trial court observed that "[t]he evidence indicated the test of water was made from a ditch which may have included raw sewage from above appellant's property. No test was ever made of the water in Coon Creek to determine if it was contaminated ... that there was no evidence of pollution in any waters; [and] that no other tests for pollution were made above or below appellant's property to prove the source of pollution." The trial court found that the Commission abused its discretion in affirming that abatement order "as there was insufficient evidence to support its findings."

On appeal, the Commission contends that there was competent and substantial evidence before the Commission to show that Hammack operates and maintains a water contaminant source for which a permit is required; that he has no permit, and that effluent discharged from Hammack's septic tank exceeds legal effluent limitations. This being so, the Commission argues that state law requires that Hammack obtain a discharge permit, without a showing of actual pollution of Coon Creek, in that the purpose of the Clean Water Act is not only to abate but also to prevent pollution of the waters of the state. It reasons that the discharge of the effluent into the ditch, which connects with the creek, is a sufficient showing of pollution. The Commission also contends that the evidence showing economic hardship to Hammack in the event of compliance was irrelevant.

Section 204.051.2 provides that "[i]t shall be unlawful for any person to build, erect, alter, replace, operate, use or maintain any water contaminant or point source in this state that is subject to standards, rules or regulations promulgated pursuant to the provisions of sections 204.006 to 204.141 unless he holds a permit from the commission ...."

"Water contaminant source" is defined in § 204.016(13), RSMo 1978 as "the point or points of discharge from a single tract of property on which is located any installation, operation or condition ... which causes or permits a water contaminant therefrom to enter waters of the state either directly or indirectly." A water contaminant is defined in § 204.016(12) as "any particulate matter or solid matter or liquid or any gas or vapor or any combination thereof, or any temperature change which is in or enters any waters of the state either directly or indirectly by surface runoff, by sewer, by subsurface seepage or otherwise, which causes or would cause pollution upon entering waters of the state, or which violates or exceeds any of the standards, regulations or limitations set forth in sections 204.006 to 204.141 or any federal water pollution control act, or is included in the

definition of pollutant in such federal act; . . . ."

The Federal Water Pollution Act, 33 U.S. C.A. § 1362(6), defines "pollutant" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water."

 Since the evidence was undisputed that the discharge from Hammack's septic tank discharge pipe contained sewage, and exceeded the allowable legal limitations for biochemical oxygen demand and suspended solids, the effluent is clearly a water contaminant, if it enters waters of the state, either directly or indirectly. § 204.016(13) supra. In this context, we judicially note that drainage is usually through tributaries that empty into streams. *City of Independence to the use of Flournoy v. Dickinson,* 224 Mo.App. 899, 27 S.W.2d 1081, 1083 (1930).

The question posed here is whether the discharge of the polluted effluent from the restaurant's septic tank discharge pipe, into a drainage ditch that empties into Coon Creek, is an entry into waters of the state of Missouri. Section 204.016(15) defines "waters of the state" as "all rivers, streams, lakes and other bodies of surface and subsurface water lying within or forming a part of the boundaries of the state which are not entirely confined and located completely upon lands owned, leased or otherwise controlled by a single person or by two or more persons jointly or as tenants in common and includes waters of the United States lying within the state."

The parties have not cited us any Missouri cases interpreting the term "waters of the state" and we find none. However, § 204.016(15) includes "waters of the United States lying within the state" as a part of the definition of "waters of the state." Federal court interpretations in regard to this problem are therefor helpful. In *United States v. Phelps Dodge Corporation,* 391 F.Supp. 1181, 1187[6] (D.C.Ariz.1975), it was

held that waters of the United States include not only all waterways in the country, but also normally dry arroyos, where any water that might flow therein could reasonably be expected to end up in a body of water. See also *United States v. Texas Pipe Line Co.,* 611 F.2d 345 (10th Cir.1979) where it was held that waters of the United States included an unnamed tributary which flowed at least during times of significant rainfall, even though the tributary was not continuously discharging water into a navigable river at the time of unlawful discharge of oil into the tributary.

These rulings are common sense, as it would make mockery of the Missouri Clean Water Act if the Commission's authority to control pollution was limited to a continuously running river, stream, or a lake. If such were the case, polluters could use ditches, "dry branches", and small tributaries as open sewers without fear of state reprisal. See *United States v. Ashland Oil and Transportation Co.,* 504 F.2d 1317, 1326 (6th Cir.1974) for similar observations concerning the right of Congress to abate pollution.

 The water contaminant from Howard B.'s Restaurant flowed from its discharge point, through a series of ditches, into Coon Creek. A court may take judicial notice of geographical facts. *Turpin v. Watts,* 607 S.W.2d 895, 900 (Mo.App.1980). In that connection, the use of official maps is authorized to establish such facts. *In re Village of Lone Jack,* 419 S.W.2d 87, 91 (Mo. banc 1967). An official United States Department of Interior Geological Survey Map (Missouri-St. Clair County-Vista Quadrangle) shows that Coon Creek has an approximate elevation of 850 feet at Collins, Missouri, and that it enters into the Sac River, at a point north and west of Collins, at an elevation of approximately 718 feet. These figures show that Coon Creek drops approximately 132 feet from Collins to the point where it enters the Sac River. The map also shows that the land to the east and south of Howard B's Restaurant has a higher elevation than does Coon Creek at Collins, Missouri.

We take judicial notice, as a matter of common knowledge, that while human excrement and other sewage, when mixed with water, has many diverse traits, the ability to run uphill, absent mechanical propulsion, is not one of them. The effluent from the restaurant, in times of water flow, wound up in the Sac River. The parties agreed at oral argument that the Sac River emptied into the Osage River which, in turn, emptied into Truman Reservoir. It is clear, from the record and the facts that we judicially note, that the water contaminants discharged from the restaurant's septic tank drainage pipe entered the waters of the state of Missouri.

Since Hammack is discharging water contaminant into waters of the state, the state of Missouri had the authority, under Chapter 204 of the Missouri statutes, to order hammack to cease polluting, and to build a proper waste treatment plant. The abatement order issued by the Department of Natural Resources and affirmed by the Clean Water Commission was based on competent and substantial evidence, and on a proper declaration and application of law. Under such circumstances, the Commission's upholding of the abatement order could not have been an abuse of the Commission's discretion, as found by the trial court. See *State ex rel. Swofford v. Randall*, 236 S.W.2d 354, 356–357 (Mo.App. 1950).

The trial court, in its findings and conclusions, seems to partially base its decision on the economic hardship that would be placed on Hammack if he were forced to comply with the law. It also observed that since Collins is a "septic tank town," the sewage disposal problem was a town problem, and not one merely of the individuals and businesses that make up the town.

The economic hardship argument has no validity, and does not excuse individuals from complying with the law. The legislature, realizing that economic hardship could ensue from immediate compliance with the Clean Water Act, provided that the Commission could, upon application from a person found to be in violation of the Act, grant a variance from the compliance sections of Chapter 204, for no greater time than is reasonably necessary for the violator to comply with the provisions of the Clean Water Act, provided that such variance is not prohibited by any federal water pollution control act, and if the granting of the variance would not cause or contribute to cause adverse health effects to humans and wildlife. § 204.061. Hammack did not seek a variance. He was aware of the necessity of upgrading his waste disposal system for nearly four years, but took no steps to comply with the law.

As to the trial court's comment that the improper sewage disposal was a town problem, and not that of individuals, there is no basis in law for such reasoning. Individuals are responsible for their own actions, and the fact that some other individual in Collins, Missouri may have been violating the provisions of the Clean Water Act is no excuse for Hammack to do so. Clean water is the essence and lifeblood of our society. Without it we will perish. The legislature had commendably, through the passage of the Clean Water Act, given the tools to the Commission to ensure that the waters of Missouri remain clean and pure, and to abate pollution in those areas where it has already occurred.

In this case, the Commission acted responsibly when, based on competent and substantial evidence, it upheld the abatement order issued by the Department of Natural Resources.

The judgment of the trial court is reversed and the abatement order issued by the Department of Natural Resources dated November 5, 1981, directed to Howard Hammack d/b/a Howard B. Restaurant and affirmed by the Clean Water Commission on May 13, 1982, is ordered reinstated.

FLANIGAN, P.J., and TITUS and CROW, JJ., concur.